**FARMERS ALLIANCE MUTUAL
INSURANCE COMPANY,
Plaintiff-Respondent,**

v.

**Leo J. REED et al.,
Defendants-Appellants.**

Nos. 9787, 9791.

Missouri Court of Appeals,
Springfield District.

Nov. 21, 1975.

James L. Paul, Pineville, Emory Melton, Joe R. Ellis, Cassville, for defendants-appellants.

Raymond E. Whiteaker, Russell G. Clark, Woolsey, Fisher, Clark, Whiteaker & Stenger, Springfield, for plaintiff-respondent.

FLANIGAN, Judge.

This is an action for a declaratory judgment. The petition of plaintiff-respondent Farmers Alliance Mutual Insurance Company (Farmers) was filed on May 16, 1972, against three defendants: Leo J. Reed (the named insured in a Family Automobile Policy issued by Farmers), Georgiann Hendrix and J. D. Hendrix.

The petition alleged, in substance, the following:

1. On August 19, 1971, a collision occurred between a Datsun operated by defendant J. D. Hendrix, in which his wife, defendant Georgiann Hendrix, was a passenger, and a Pontiac operated by defendant Reed.

2. Part I of the policy issued by Farmers to Reed required Farmers to pay on behalf of Reed all sums which Reed shall become legally obligated to pay as damages because of bodily injury or property damage arising out of the use of the Pontiac and to defend any suit alleging such bodily injury or property damage and asking damages which are payable under the terms of the policy, even if the allegations of the suit are groundless, false, or fraudulent.

3. The policy contains this exclusion: "This policy does not apply under Part I to bodily injury or property damage caused intentionally by or at the direction of the insured."

4. A controversy exists between Farmers and defendants with respect to rights and liabilities under the policy. The controversy involves the issue of whether or not the injuries and damages being claimed by defendants Georgiann Hendrix and J. D. Hendrix were intentionally caused by Reed within the meaning of the exclusion.

5. On March 9, 1972, Georgiann Hendrix and J. D. Hendrix instituted civil action No. 4704 in the Circuit Court of McDonald County, Missouri, against Leo Reed. In case 4704 Georgiann Hendrix seeks $25,000 for bodily injuries, J. D. Hendrix seeks $5,000 for loss of his wife's services, and J. D. Hendrix seeks $500 for damage to the Datsun.

6. Farmers' investigation showed that "[t]he occurrence in question was not, in fact, accidental but intentional in nature." As a result of such investigation Farmers refused to "accept coverage" and "declined to protect" Reed in case 4704.

7. Case 4704 "was instituted on a theory of negligence[1] . . . Because of the allegations in said petition it may well be that (Farmers) owes (Reed) a defense to said suit; but if the facts are as claimed by (Farmers) then (Farmers) would owe nothing on any judgment that might possibly be rendered in favor of Georgiann Hendrix and J. D. Hendrix. . . . Because of the policy defenses as claimed in this petition, unless there is a declaration of the various rights and liabilities or absence of same under said policy an irreconcilable conflict of interest arises between (Farmers) and (Reed)."

The prayer requested that the court adjudge whether or not Farmers was obligated to defend Reed in case 4704 and whether

---

1. Attached as exhibits to the petition in the case at bar were the insurance policy and the petition in case 4704. The latter pleaded negligence on the part of Reed, including excessive speed and failure to keep a lookout.

or not Farmers was obligated to pay, within the limits of its policy, any judgment which defendants Georgiann Hendrix and J. D. Hendrix might obtain against Reed therein.

By his answer defendant Reed pleaded that the petition in case 4704 was grounded on negligence rather than intentional misconduct, requested a dismissal of Farmers' petition, and sought no affirmative relief.

The separate answer of Georgiann Hendrix and J. D. Hendrix admitted that on August 19, 1971, a collision occurred between the Datsun occupied by them and the Pontiac driven by Reed, admitted they had filed case 4704, denied the other allegations of the petition, sought no affirmative relief, and requested dismissal of the petition.

At the conclusion of the evidence the trial court, sitting without a jury, found the exclusion to be applicable and decreed that Farmers was not obligated to defend Reed or to pay any judgment which Georgiann Hendrix or J. D. Hendrix might obtain against Reed. From that judgment the three defendants appeal. This court affirms the judgment.

Reed's brief and the brief of the Hendrixes advance two points which are, in effect:

1. The trial court erred in entertaining the action for the reason that the remedy of obtaining a declaratory judgment was not available to plaintiff.

2. The trial court erred in exonerating plaintiff for the reason that the evidence adduced was insufficient to support the finding that the exclusion was applicable.

The Missouri Declaratory Judgment Act, §§ 527.010—527.140 V.A.M.S., some of which has been incorporated in Rule 87 V.A.M.R., was discussed in *State v. Terte*, 351 Mo. 1089, 176 S.W.2d 25 (1943). There our supreme court pointed out that the Federal Act (now Title 28 U.S.C.A. §§ 2201–2202) is sufficiently similar "to make the decisions of the Federal courts persuasive" (*Terte,* supra, p. 28) in the interpretation of the Missouri Act. The court also stated that relief by declaratory judgment was not intended to displace all existing remedies and that the courts have a wide discretion in administering it. The discretion so exercised must be a sound judicial discretion, based on good reason, and calculated to serve the purpose for which the legislation was enacted, namely to afford relief from uncertainty and insecurity.

*Terte* was a mandamus proceeding in which the relator, a fire insurance company, sought an order compelling the trial court "to take jurisdiction" of a declaratory judgment action which the relator had filed in that court. The trial court had entered an order staying the proceedings in the declaratory judgment action pending the outcome of a separate action which the insured had brought against the relator to recover on the policy. In declining to interfere, by mandamus, with the trial court's order staying the proceedings, the supreme court pointed out that a trial court, in exercising discretion to stay relief in a suit for declaratory judgment because of another action pending, may consider public policy and interest, efficiency, convenience, economy, and the good or bad faith of the party bringing the declaratory judgment action. The court stated that the most important factors are:

1. Whether the plaintiff in the suit for declaratory relief is in a position of uncertainty or insecurity;

2. Whether the suit will terminate the uncertainty and insecurity as effectually as the other action; and

3. Whether public policy and interest will be served.

In *Terte* the court emphasized that the trial court had not refused to *take* jurisdiction but had refused to *exercise* it.

Federal authority exists to the effect that here the trial court, as a matter of discretion, could have declined to exercise jurisdiction. *United Pacific Insurance Company v. Brown*, 240 F.Supp. 223 (E.D.Or.1965); *Gulf Insurance Company v. Dooley*, 286

F.Supp. 16 (N.D.Ill.1968); *Home Indemnity Insurance Company v. Lively*, 353 F.Supp. 1191 (W.D.Okl.1972); *State Farm Mutual Automobile Ins. v. Moore*, 177 F.Supp. 520 (D.Or.1959).

In each of those cases the same or a similar exclusion was involved and a separate action in tort was pending against the insured. In *Brown* and in *Moore* the tort action was based on alternative grounds of negligence and wantonness. In *Dooley* the tort action sought recovery on alternative grounds of negligence and willfulness. In *Lively* the tort action was grounded only on negligence.

In *Brown* the federal court held that an actual controversy of justiciable nature existed which the court could determine. The court said: "There is no question but that this Court has jurisdiction to entertain plaintiff's declaratory action." But, as a matter of discretion, it refused to exercise jurisdiction and sustained a motion to dismiss the complaint. *Moore* is to the same effect.

In *Dooley* the federal court also dismissed the declaratory judgment action and, in so doing, stated that it was clear that the insurance company had a duty to defend its insured. The court did say that "a real and substantial controversy" existed.

In *Lively* the court said that since the petition in the tort action pleaded only negligence, the insurer had a duty to defend the insured, the exclusion being "presently inapplicable." However, the court declined to determine, at that time, whether or not the insurer would have a duty to pay the judgment (relying upon the Harbin case mentioned in footnote 2 of this opinion).

A similar result was reached in *Employers Fire Ins. Co. v. Beals*, 103 R.I. 623, 240 A.2d 397 (1968). There also a declaratory judgment action brought by an insurance company, and based on the same exclusion, was dismissed. After the declaratory judgment action had been brought, a separate action was brought against the insured by the injured person, based on allegations of negligence and willfulness. The dismissal of the action by the trial court was held to be a proper exercise of discretion.

Another factor which might have induced the court to decline to exercise jurisdiction is the principle enunciated in *Martin v. Yeoham*, 419 S.W.2d 937, 946[3] (Mo.App.1967) that proof of a willful act, in the tort case, "will not justify or support jury submission of the case on a hypothesis that the injury for which recovery is sought was the result of an act of negligence."

In *Nations v. Ramsey*, 387 S.W.2d 276, 279 (Mo.App.1965) it is said: "[t]he declaratory judgment act, while it is to be interpreted liberally, is not a general panacea for all real and imaginary legal ills, nor is it a substitute for all existing remedies. It should be used with caution. And except in exceptional circumstances plainly appearing, it is not to be used and applied where an adequate remedy already exists." That language is quoted with approval in *Harris v. State Bank & Trust Co. of Wellston*, 484 S.W.2d 177, 178[4] (Mo.1972). See also *State Farm Fire & Cas. Co. v. Powell*, 529 S.W.2d 666 (Mo.App.1975).

On the other hand there are federal authorities supporting the proposition that the remedy of a declaratory judgment was available to plaintiff. *Farm Bureau Mutual Automobile Ins. Co. v. Hammer*, 177 F.2d 793 (4th Cir. 1949); *Great American Ins. Co. v. Ratliff*, 242 F.Supp. 983 (E.D.Ark.1965).

In *Hammer* it was held that the trial court erred in dismissing a complaint in which an insurer sought a declaratory judgment to the effect that its automobile insurance policy did not apply to the defense of certain state court actions brought against its insured, those actions having been based on negligence. The state court actions had already proceeded to judgment. The insurer relied upon an exclusion based on intentional injury. The court pointed

out a conflict[2] between the interests of the insurer and those of the insured. Indeed, the court stated "it was not possible" for the insurer to defend the state court actions and at the same time protect its own interests. "It could not exculpate itself by showing that the injurious acts of the insured were beyond the scope of the policy, for this showing would establish the liability of the insured to the injured party to an even greater extent than that claimed in the complaints." The court concluded that the insurance company "is entitled to its day in court to show, if it can, that its policy did not cover the injurious acts which the insured committed."

In *Ratliff* an insurer brought a declaratory judgment action, seeking relief from coverage by reason of a similar exclusion. While the declaratory judgment action was pending, the injured person, in a separate action against the insured, obtained a judgment based on negligence. At p. 990 the court said that it thought it clear "that an insurance company has a right to have a claim of nonliability on an automobile policy, such as the claim involved here, litigated in an independent action with the company aligned on one side and the insured and the injured third party, if any, aligned on the other side. And a suit for a declaratory judgment is certainly appropriate for that purpose." However, the court said that it probably would not have tried the declaratory judgment action until the tort litigation was disposed of.

Peculiarly enough, although both *Hammer* and *Ratliff* involved situations where the tort actions had already proceeded to judgment, a leading authority on federal practice states, indeed emphasizes, that declaratory relief is available to the insurer prior to the rendition of the judgment in the suit against the insured.[3]

"There is a distinction between the jurisdiction of a court to grant declaratory relief and the exercise of discretion pursuant to that jurisdiction." 26 C.J.S. 70 Declaratory Judgments § 11. It seems clear that the conflict in the federal authorities is based on whether, in a given factual situation, the court in its discretion should exercise jurisdiction in the declaratory judgment case. The conflict is not based on any doubt as to the existence of such jurisdiction.

California cases are to the effect that the remedy of a declaratory judgment was available. *General Insurance Company of America v. Whitmore*, 235 Cal.App.2d 670, 45 Cal.Rptr. 556 (1965); *Commercial Insurance Company of Newark, N. J. v. Pressley*, 53 Cal.Rptr. 220 (1966).

In *Whitmore* the insurer brought an action for a declaratory judgment, relying upon an exclusion with respect to intentional acts. A separate tort case against the insured was grounded on negligence. The court held that the remedy was available and that the insurer's duty to defend the tort case ended upon the obtaining of relief

2. The same conflict of interest was discussed in *Harbin v. Assurance Company of America*, 308 F.2d 748 (10th Cir. 1962), where a declaratory judgment action was entertained on behalf of an insurer which requested relief based upon an exclusion with respect to injuries "caused intentionally by or at the direction of the insured." However, in Harbin, the petition in the tort action was based on intentional misconduct. The court held that the insurer was not obligated "at this time" to defend the state court action but that its judgment was not determinative of the insurer's coverage in the event, *when the facts were established*, the exclusion proved to be inapplicable.

3. "It cannot be denied that an insurer in the *Hammer* situation is on the horns of a dilemma, insofar as the action against the insured is concerned; given notice and an opportunity to defend, the insurer is bound by the judgment on the negligence claim, whether or not he defends; and, if he does defend, he cannot contend that the insured was guilty of intentional wrong-doing. But the insurer is not entirely without a remedy; a suit against the insured and the injured claimant for a declaratory judgment of noncoverage, *prior to rendition of judgment in the suit against the insured*, may be entertained at the discretion of an appropriate court." Moore's Federal Practice, 2d Edition, Vol. 1B, p. 1557, § 0.411[6].

in the declaratory judgment action.[4] The court indicated that the proceeding was not premature and the trial court had erred in dismissing the action.

In *Pressley* the court, in a similar situation, held that "the remedy of declaratory relief is particularly appropriate" and that opportunity had been afforded, in the declaratory judgment action, to the insured and to the injured person to litigate fully the facts upon which hinged the applicability of the exclusion with respect to intentional injuries. There also the petition in the separate damage suit contained a claim based on negligence. The court stated that the interest of the insurer was "wholly inconsistent" with the interests of its insured.

■ It is true that in Missouri "ordinarily the insurer's duty to defend is determined from the policy provisions and the allegations of the petition." *Zipkin v. Freeman*, 436 S.W.2d 753, 754 (Mo. banc 1968). See also 7 Am.Jur.2d 494, Automobile Insurance § 162 and annotation in 50 A.L.R.2d 458 (allegations in third person's action against insured as determining liability insurer's duty to defend).

*Zipkin* was a garnishment action brought against the insurer by a successful tort plaintiff to collect a judgment obtained against the insured. The insurer had declined to defend the tort case. The insurer attempted to avoid coverage by claiming that the conduct of its insured did not amount to "professional services" and that coverage was afforded only with respect to

same. The court said that the insurer was not entitled to deny coverage on that ground because that issue could have been litigated by the insurer in the damage suit and it had failed to do so. The court mentioned that the *evidence* in the damage suit showed "that the damage done to Mrs. Zipkin . . . resulted and was made possible only because there were professional services rendered . . . ." *Zipkin* at p. 763. However, the court pointed out that after the insurer had declined to defend the tort case "*nothing was done about seeking a declaratory judgment* or defending under a reservation of rights agreement or notice thereof." (Emphasis supplied) *Zipkin* at p. 754. Thus the holding in *Zipkin* is no bar to what was done here because, in *Zipkin,* the evidence concerning the coverage issue had in fact been heard, and a judgment had been entered therein. It is unnecessary to determine what the result would be in the case at bar had case 4704 proceeded to judgment before this case was tried.

Before it instituted this declaratory judgment action, plaintiff's position was not a novel one. A leading authority has pointed out that frequently it is difficult for the insurer to decide whether or not to defend the tort case and that this is particularly so where the insurer desires to show that the claim against the insured is based upon facts excluded from the policy coverage. 7 Am.Jur.2d 493, Automobile Insurance § 161.[5]

The case at bar and case 4704 were both pending in the same court. Nothing in the

4. In the case at bar, as indicated previously, Reed sought no affirmative relief with respect to expenses which he may have incurred to date in defending case 4704. It is unnecessary to determine whether such a request would have had merit.

5. The same text adds: "If under such circumstances the insurer refuses to defend and decides to await the determination of its obligation in a subsequent proceeding against it, it must do so at its peril, and if the insurer guesses wrong, it must bear the consequences, legal or otherwise, of its breach of contract. For this reason, where the insurer is dubious about its liability, it will frequently attempt to enter into a so-

called nonwaiver agreement with the insured. Such an agreement provides that the insurer will defend a suit against the insured, but that it disclaims liability and retains its right to later assert the policy breach or noncoverage. *Another remedy which may be available to the insurer is to secure an adjudication of nonliability by way of a declaratory judgment. Such a judgment, if available, settles definitely the question of its duty to defend, and generally, questions involving the liability of insurance companies under their policies are proper subjects for declaratory relief.*" (Emphasis supplied)

instant transcript reflects any attempt on the part of the defendants to obtain a stay of these proceedings until case 4704 was tried.

The evidence concerning the coverage issue has now in fact been heard and the issue has been determined. Whether or not the same issue could have been determined in another proceeding (such as an action by the Hendrixes to collect, by garnishment [6] or under § 379.200 V.A.M.S.,[7] a judgment they might obtain against Reed in case 4704, or an action by Reed against the insurer for wrongful refusal to defend case 4704 and to protect him from any judgment therein), it seems reasonable to believe that the experienced trial judge, before whom both actions were pending, did not deem the existence of such possible alternative remedies to be an adequate basis for refraining from exercising his declaratory judgment jurisdiction.

■ The brief of the Hendrixes states that if this appeal fails, they have "lost their case without benefit of a jury trial." The brief of Reed also states that the facts "should be tried before a jury." That argument has no weight because none of the defendants requested a jury trial in the declaratory judgment action and, under Rule 69.01(b)(4), by entering into trial before the court without objection, they waived trial by jury.[8]

Rule 87.02 enumerates certain instances in which relief by declaratory judgment may be obtained, but Rule 87.02(d) states: "The foregoing enumeration of instances in which persons may obtain relief by declaratory judgments is illustrative, and anyone may obtain such relief *in any instance in which it will terminate a controversy or remove an uncertainty.*" (Emphasis supplied)

Here the trial court was confronted with a controversy. That controversy existed between the plaintiff on the one hand and its insured and the tort claimants [9] on the other on the issue of coverage. The insurer was, justifiably, uncertain about the applicability of the exclusion to the facts at bar. All parties to the controversy were before the court, each with an opportunity to present evidence on the coverage issue. The factual dispute has been resolved by the court. If its decision on that point stands, as this opinion later holds, the uncertainty is removed and that controversy has terminated.[10]

6. See *Cook v. McCoy*, 118 S.W.2d 1043, 1046[6] (Mo.App.1938); *Linenschmidt v. Cont. Cas. Co.*, 356 Mo. 914, 204 S.W.2d 295 (1947); 18 Couch on Insurance, 2d, § 74:102, p. 313.

7. See *Adams v. Manchester Ins. & Ind. Co.*, 385 S.W.2d 359, 363[3] (Mo.App.1964); *Galemore v. Haley*, 471 S.W.2d 518, 524[8] (Mo.App.1971); *Martinelli v. Sec. Ins. Co. of New Haven*, 490 S.W.2d 427, 433[9, 10] (Mo. App.1973).

8. As to the right to trial by jury in a declaratory judgment action, see Rule 87.06 V.A. M.R.; § 527.090 V.A.M.S.; *MFA Mutual Insurance Company v. Quinn*, 259 S.W.2d 854, 859[4] (Mo.App.1953); *State ex rel. U. S. Fire Ins. Co. v. Terte*, 351 Mo. 1089, 176 S.W.2d 25, 31[11] (1943); *Durwood v. Dubinsky*, 291 S.W.2d 909, 915[5] (Mo.1956); *State Farm Fire and Cas. Co. v. Powell*, 529 S.W.2d 666 (Mo.App.1975).

9. The propriety of joining the Hendrixes in the declaratory judgment action is supported by the highest judicial authority. *Maryland Casualty Company v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). Rule 87.04 V.A.M.R. provides in part: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings . . ." The non-joinder of the tort claimant, Golub, in *Commonwealth Insurance, Inc. v. Arnold*, 389 S.W.2d 803 (Mo.1965) was a factor specifically mentioned by the supreme court in affirming the action of the trial court in dismissing a declaratory judgment action. "Golub is not a party to this action and there is no way by which a final determination may be made in this case of the basis of Golub's claim." (p. 808).

10. In *Commonwealth Ins. Agency, Inc. v. Arnold*, cited in footnote 9, the following language appears at p. 807: "In a situation such as this, by far the greater number of actions for declaratory judgment to determine whether or not a particular claim is within the coverage of a policy of insurance

In 22 Am.Jur.2d 396 Declaratory Judgments § 41 it is said: "In the case of liability policies, a dispute or controversy between the insurer and its insured as to the fact or extent of liability under the policy to the persons injured as a result of the operation of the insured automobile, including, in most cases, the insurer's obligation to defend the insured in actions threatened or pending for damages against him, is generally held to present an actual or justiciable controversy within a declaratory judgments act. An actual controversy is usually held to exist between the insurer and the injured party suing the insured, since there is generally a real possibility that the injured party might look to the insurer for payment; and the obtaining of a judgment against the insured is generally held not to be a condition precedent to the existence of an actual controversy involving the liability of the insurer." See also 20 Appleman, Insurance Law and Practice § 11354, p. 145.

■ This court holds that the trial court had jurisdiction to hear the case at bar and that the trial court did not abuse its discretion in electing to exercise that jurisdiction. To hold otherwise would be, in effect, to require all of the parties to relitigate the issue of coverage in one or more other proceedings after case 4704 has proceeded to judgment, at least if the Hendrixes prevail therein. No sound reason appears for requiring that duplication of effort and expense.

■ Defendants' second point is that the evidence adduced is insufficient to support the finding of the trial court that the facts bring the exclusion into play. In reviewing that contention, in accordance with Rule

73.01, this court must "review the case upon both the law and the evidence as in suits of an equitable nature" and give due regard to the opportunity of the trial court to have judged the credibility of witnesses. The judgment of the trial court is not to be set aside unless it is "clearly erroneous" even though the quoted term no longer appears in Rule 73.01(3). *Tharp v. Oberhellmann,* 527 S.W.2d 376, 379[1, 2] (Mo.App.1975), and cases cited in footnote 2 therein. This rule, of course, applies in declaratory judgment actions tried without a jury. *Hillyard v. Leonard,* 391 S.W.2d 211, 215[1] (Mo.1965). *Wes. Cas. & Sur. Co. of Ft. Scott, Kan. v. Wunderlich,* 447 S.W.2d 1, 4[2] (Mo.App. 1969).

■ The burden was on plaintiff to prove facts which would make the policy exclusion applicable. *Mission Ins. Co. v. Ward,* 487 S.W.2d 449[3] (Mo. banc 1972).

■ Three witnesses testified for the plaintiff and defendant J. D. Hendrix testified on his own behalf. Significantly defendant Reed did not testify.[11]

The evidence discloses:

The incident involving Reed and the Hendrixes took place on August 19, 1971, on Highway 140 near Bella Vista, Arkansas. Reed was driving the Pontiac and J. D. Hendrix was driving the Datsun. Reed was drunk. One and one-half miles east of the point where the incident culminated, the Pontiac collided with the rear of the Datsun. After that collision the Pontiac followed the Datsun "right on his bumper." Hendrix became frightened and accelerated the Datsun but the Pontiac also accelerated. A second collision occurred between the vehicles and the Pontiac forced the Datsun off

are brought by the insurer . . . In such case, the fact that no judgment has been obtained against the insured so that the amount, if any, of the insurer's liability is at the particular stage of the proceedings unknown is no bar to the insured's (sic) action to disclaim liability, which action may, of course, terminate in a judgment declaring the insurer liable for any loss."

11. "It is well settled that the failure of a party having knowledge of the facts and circumstances vitally affecting the issues on trial to testify on his own behalf . . . raises a strong presumption that such testimony would have been unfavorable and damaging to the party who fails to proffer the same." *Bean v. Riddle,* 423 S.W.2d 709, 720[9] (Mo.1968).

the road. After the vehicles came to rest Reed made the statement that the people in the Datsun "were out to get him" and "I just got them first." It appeared to one of plaintiff's witnesses that Reed "was trying to hit" the Datsun "because it was a perfect shot." After the second collision, and when the Datsun tried to re-enter the highway from the shoulder area, "it looked like (Reed) intentionally tried to herd the man back as he came on the road, it looked like he was trying to prevent him from coming on the road." To the witness it looked like the Pontiac "very purposely hit" the Datsun.

Hendrix hailed down one of the witnesses, who came upon the scene immediately, and told the witness "Go get the police, this bastard is crazy. He is trying to kill us." Reed pounded on the hood of the witness' car and then grabbed the witness by the shoulder and said he was going to whip the witness. Other cars stopped and Reed "was wanting to whip everybody."

Hendrix told the witness that Reed had tried to "run us off the road earlier in Missouri." The speed of the Pontiac, at least at the time of the second collision, was 55 to 60, although the speed limit was 35.

Damage to the Datsun amounted to $300 and Georgiann Hendrix complained of injuries.

In the statement Reed had given to the plaintiff, Reed stated that he was mad and tried to stop the Datsun but the Datsun would not stop "so I ran up beside a couple of times and finally I just cut around kind of in front of him and he ran off" the road. Elsewhere in the statement Reed said "I forced him to stop."

Exclusions similar to or identical with the exclusion involved here are dealt with in 2 A.L.R.2d 1238 "Liability Insurance: specific exclusion of liability for injury intentionally caused by insured." There the following language appears at p. 1241: "The courts have generally held that injury or damage is 'caused intentionally' within the meaning of an 'intentional injury exclusion clause' if the insured has acted with the specific intent to cause harm to a third party, with the result that the insurer will not be relieved of its obligations under a liability policy containing such an exclusion unless the insured has acted with such specific intent. Under this view, it is not sufficient that the insured's intentional, albeit wrongful, act has resulted in unintended harm to a third person; it is the harm itself that must be intended before the exclusion will apply. There is, however, some authority for the proposition that such a clause will operate to relieve a liability insurer of its duty to indemnify an insured whose intentional act has caused harm to a third person where the nature or character of the act is such that an intent to cause harm is thereby inferred as a matter of law."

This court holds that the evidence justifies the conclusion that Reed intended that the Pontiac collide with the Datsun, and that he intended to cause damage to that vehicle and injury to its occupants. Accordingly, under either of the foregoing views of the exclusion, the trial court was justified in finding that the exclusion was applicable. See *Allstate v. Hisely*, 465 F.2d 1243 (10th Cir. 1972); *Rankin v. Farmers Elevator Mut. Ins. Co.*, 393 F.2d 718, 720[1] (10th Cir. 1968).

The judgment is affirmed.

All concur.

HOGAN, J., in separate concurring opinion filed.

HOGAN, Judge (concurring):

I fully concur in all that is said in the principal opinion except the statement that the trial court's judgment must be deferred to unless it is "clearly erroneous". I do not believe we can read the phrase "the judgment shall not be set aside unless clearly erroneous" back into the rule after it has been revised out, presumably deliberately. I realize that the words "clearly erroneous" were considered ambiguous by some judges,

but the phrase had a respectable history and a definite purpose, *Lundgren v. Freeman*, 307 F.2d 104, 113–114[15–17] (9th Cir. 1962), and in providing that the *judgment* was subject to deference, the drafters of the former rule recognized the futility of attempting to distinguish between "findings of fact" and "conclusions of law". See S. Weiner, the Civil Nonjury Trial and the Law-Fact Distinction, 55 Cal.L.Rev. 1020, 1021–1024 (1967). Moreover, former Rule 73.01(d) recognized the utter impracticality of literal "de novo" findings of fact in bench-tried cases. See *United States v. Aluminum Co. of America*, 148 F.2d 416, 433[18–21] (2d Cir. 1945). In my view, present Rule 73.01, read literally, leaves us perfectly free to second-guess the trial court on any matter, and will probably encourage appeals in the hope we shall do so. See *Morris v. Holland*, 529 S.W.2d 948 (Mo. App.1975).