AMERICAN ECONOMY INSURANCE COMPANY, Plaintiff–Appellant,

v.

Trena LEDBETTER, Jeremy D. Ledbetter, Stacy Yvonne Ledbetter and Colonial Insurance Co. of California, Defendants–Respondents.

No. 20169.

Missouri Court of Appeals, Southern District, Division Two.

July 25, 1995.

A.M. Spradling III, Spradling & Spradling, Cape Girardeau, for plaintiff-appellant.

Michael B. Hazel, Hazel & Ford, W. Edward Reeves, Ward & Reeves, Caruthersville, for defendants-respondents Ledbetters.

John M. Beaton, Barbara A. Godley, Welman, Beaton, Hively & Godley, Kennett, for defendant-respondent Colonial Ins.

SHRUM, Chief Judge.

This is an appeal by plaintiff American Economy Insurance Company (Economy) from a declaratory judgment. The dispositive issue is whether Economy had standing to bring the suit. We answer, "No."

Another question is whether the trial court abused its discretion in making an award of attorney fees to some of the defendants-respondents. Again, we answer, "No." We affirm.

On August 9, 1990, Michael Davis was driving a 1984 Mercury Cougar automobile when, in an attempt to pass another vehicle, he crossed the centerline and collided with a vehicle operated by Lanny Ledbetter. Both drivers died from injuries received in the accident. Ledbetter was survived by his spouse, Trena, and children, Jeremy D. and Stacy Yvonne Ledbetter.

Economy insured the vehicle operated by Lanny Ledbetter. That policy contained uninsured/underinsured motorist coverage.

Before the accident, Davis purchased automobile liability from Colonial Insurance Co. of California (Colonial). That policy originally insured a 1982 Chevrolet Camaro and provided a $25,000 bodily injury liability coverage. However, in June 1990, Davis traded the Camaro for the 1984 Mercury involved in

the August 1990 accident. Because Davis allegedly failed to notify Colonial about the replacement vehicle, Colonial questioned coverage.

Nevertheless, in the fall of 1990 Colonial paid $1,000 to the estate of Michael Davis on a medical benefit under the policy, paid Trena Ledbetter the value of the Ledbetter vehicle as a property damage liability benefit under Michael Davis's policy, and agreed with the Ledbetters to pay them the $25,000 policy limit for bodily injury, subject to approval of the settlement by the circuit court. However, as the Ledbetters awaited court approval of the settlement via a friendly suit, Colonial withdrew its offer of settlement.[1]

After Colonial withdrew its settlement offer, Economy brought this declaratory judgment action in two counts. It named Colonial and the three surviving members of the Ledbetter family as defendants. No one was named as a party to act in a representative capacity for the decedent Michael Davis.

In Count I, Economy asked the trial court to declare that Colonial's policy did "furnish insurance coverage to ... Davis with reference" to the Ledbetter family's claims. Continuing, Economy sought a declaration that Colonial, by agreeing to settle for their policy limits, "waived any claim it may have had to lack of coverage and should be estopped to deny such coverage."

In Count II, Economy asked the trial court to declare that its liability to the Ledbetters be reduced by $25,000, the amount of coverage it claims should be extended to Davis by Colonial's policy.[2]

In part, Colonial answered by a pleading affirmatively that Economy "has no standing to assert any waiver or estoppel between ... Colonial and its insured [Michael Davis]...."

Following a nonjury trial the trial court entered judgment contrary to Economy on all its requests. Included was this finding:

"The Court finds that Economy has no standing to allege waiver and estoppel under these circumstances. *St. Paul Fire and Marine v. Med. [Protective] Co.*, 675 S.W.2d 665 (Mo.App.1984)."

Also, in each of the two counts the trial court ordered Economy to pay $2,500 to the Ledbetters as part of their attorney fees expense. Economy appeals. We affirm.

■ In Point IV, Economy contends that the trial court erred when it found that Economy lacked "standing" to bring this declaratory judgment action. Economy says—correctly so—that standing for a declaratory judgment action requires a legally protectable interest, *Schweig v. City of St. Louis*, 569 S.W.2d 215, 223 (Mo.App.1978), which means a "'pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief, either immediate or prospective.'" *City of Jackson v. Heritage Savings & Loan Ass'n*, 639 S.W.2d 142, 144 (Mo.App.1982). *See Absher v. Cooper*, 495 S.W.2d 696, 698 (Mo.App.1973). Continuing, Economy argues that it "obviously has a pecuniary interest directly at issue or in jeopardy in this case," i.e., $25,000, the balance of Economy's uninsured motorist coverage that Economy presumably will pay the Ledbetters if Colonial's denial of coverage to Davis is left unchallenged.

■ "Standing is a concept utilized to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court...." *Black's Law Dictionary* 1405 (6th ed. 1990) (citing *State ex rel. Cartwright v. Oklahoma Tax Com'n*, 653 P.2d 1230, 1232 (Okla.1982)). A "justiciable controversy" is a necessary element in a

---

**1.** Under § 537.095, RSMo 1994, circuit court action is required to apportion a settlement or recovery of damages for a wrongful death where there are multiple surviving family members.

**2.** In its brief, Economy concedes that *Nolan v. American States Preferred Insurance Co.*, 851 S.W.2d 720 (Mo.App.1993), now controls part of the allegations in Count II about stacking of underinsured coverage. (The original Count II allegations are summarized in *American States Insurance Co. v. Ledbetter*, 886 S.W.2d 682 (Mo.

App.1994)). Accordingly, Economy now says it has paid the Ledbetters $100,000, "which represented the additional amount it owed under the stacked policies that the ... Ledbetters had with [Economy]." Continuing, Economy says that the only amount left in dispute is the $25,000 to which it claims the right of set-off per *Nolan*, provided the actions of Colonial are construed to be an acceptance of coverage under the Davis policy.

declaratory judgment action. *Witty v. State Farm Mutual Automobile Insurance Co.,* 854 S.W.2d 836, 838 (Mo.App.1993).

To support its claim of standing, Economy cites several cases on the subject, each of which is factually distinguishable or, for other reasons, does not support Economy's position.[3] Moreover, Economy has not distinguished this case from the holding and rationale of *St. Paul,* 675 S.W.2d 665, the case relied on by the trial court. Analysis shows *St. Paul* to be strikingly similar to this case, so much so that we deem the ruling in *St. Paul* as controlling this case.

In *St. Paul,* a physician (Dennis Hite) had in force two separate policies of insurance, one issued by plaintiff St. Paul (Personal Liability Catastrophe Policy) and another by defendant Medical Protective (malpractice policy). *Id.* at 666–67. When another physician sued Hite for defamation, St. Paul filed a declaratory judgment suit against Medical Protective. By its suit, St. Paul sought an interpretation of Medical Protective's medical malpractice policy. *Id.* at 666. Specifically, St. Paul alleged that the St. Paul policy was excess insurance over and above coverage afforded by Medical Protective's malpractice policy. *Id.* at 666–67. Hite was not made a party to the declaratory judgment suit. *Id.* at 667. The trial court in *St. Paul* addressed the merits, found no coverage under Medical Protective's policy, and granted summary judgment to Medical Protective. *Id.* at 666.

On appeal, the Eastern District found that St. Paul lacked standing under the Declaratory Judgment Act to request the court to interpret the contract of insurance purchased by Hite from defendant Medical Protective. The court said:

> "Plaintiff St. Paul was not a party to the Medical Protective policy. Nor is it a third-party beneficiary who could enforce defendant's medical malpractice contract. *No authority has been cited to this court and we find none which would authorize or grant standing to seek a declaration of rights under a contract to one who is not a party and who has no right to enforce the contract.* In *Hardware Center, Inc. v. Parkedge Corp.,* 618 S.W.2d 689, 694–695 (Mo.App.1981) we held that the provisions of our Declaratory Judgment Act do not extend standing to a party nor enlarge the jurisdiction of the court over subject matter or parties. 'It merely opens the doors for the court to certain potential defendants or plaintiffs at a stage prior to that justifying an action for other traditional relief. (citations omitted).' *Id.* at 694. We there concluded that the Act does not grant standing to a stranger to the contract to be construed."

*Id.* at 667 (emphasis ours).

In *St. Paul,* the plaintiff sought a declaration as to whether its insured was entitled to coverage from another company and, if so, which coverage was primary and which excess. Here, Economy seeks a determination of whether there is coverage under a contract to which Economy is a complete stranger, i.e., the Colonial–Davis policy and, if so, whether Economy was entitled to a set-off equal to the Colonial policy limits. The cases are analogous. As in *St. Paul,* here,

---

3. In *Beard v. Jackson,* 502 S.W.2d 416 (Mo.App. 1973), plaintiff's auto policy provided uninsured motorist coverage. When defendant driver (alleged to be uninsured) defaulted, plaintiff's insurer was allowed to intervene. Rule 52.11(a)(2) (now Rule 52.12(a)(2)) provided for intervention as a matter of right "[w]hen the representation of the applicant's interest by existing authorities is or may be inadequate and the applicant is or may be bound by a judgment in the action...." The *Beard* court held intervention was proper as a means whereby the insurer could adequately protect its interests in its own contract by raising appropriate defenses. That is not this case. Economy is not an intervenor, but rather seeks a declaration of rights in a contract to which it is not a party. In *Protective Casualty Insurance Co. v. Cook,* 734 S.W.2d 898 (Mo.App.1987), a foreign auto liability insurer filed an interpleader action by which it paid $20,000 into court and asked that its total liability be limited to that amount ($20,000 being minimum coverage requirement in the state where the alleged tortfeasor lived when policy was issued). The court held on appeal that State Farm (which was subject to possible uninsured motorist coverage exposure) had standing to intervene because the "interpleader action may determine the amount of the 'fund' to which [claimant] may be entitled. Hence, State Farm has an 'interest' in the fund in the interpleader action." *Id.* at 902. The instant case differs. Economy is not an intervenor nor is there a "fund" in which Economy has an interest. Other cases cited by Economy are foreign authority which we decline to follow in light of existing Missouri case law on the subject.

Economy is not a party to the Colonial–Davis insurance contract nor is it a third-party beneficiary that can enforce the policy. Moreover, Economy's petition does not allege that Davis or anyone acting on his behalf claimed there was coverage under the Colonial policy or tendered the defense of the underlying action to Colonial. *See State Farm Fire and Casualty Co. v. Alberici*, 852 S.W.2d 388, 389 (Mo.App.1993). Nor is there an allegation that Davis (or his legal representative) disagrees with Colonial's interpretation of noncoverage. *See Id.* Without such allegations the petition does not allege facts showing a justiciable controversy between Davis and Colonial; hence, Economy has failed to demonstrate standing. *Id. See also Witty*, 854 S.W.2d at 838–39.

On the authority of *St. Paul, Alberici*, and *Witty*, we agree with the trial court's finding on the standing issue. We hold that under the circumstances, Economy had no standing under the Declaratory Judgment Act to request a declaration of whether coverage existed for Michael Davis under the policy he purchased from defendant Colonial. Point IV is rejected.

■ Although none of the parties to this appeal has raised the question of nonjoinder of Davis or his legal representative as a party, we raise it on our own motion.[4] The petition raises matters in which Davis (or his legal representative) has an interest which would be affected by the declaration. *Witty*, 854 S.W.2d at 842. It is no answer to say that his rights would not be prejudiced by the declaration. *Id.* We need not lengthen this opinion with further discussion on this issue. Based on *Witty*, we also find that Davis or a party acting on his behalf was an indispensable party to this litigation without whose presence the trial court could not proceed under the Declaratory Judgment Act. *Id.*

■ Because our affirmance rests on our findings that Economy lacked standing and that an indispensable party was absent, the only other claim of error that we must address is Point III. There, Economy challenges the trial court's award of attorney fees to the Ledbetters. It concedes the general rule to be that such an award is authorized in a declaratory judgment action. *See Labor's Educational and Political Club Independent v. Danforth*, 561 S.W.2d 339, 350 (Mo.banc 1977); *Bernheimer v. First National Bank of Kansas City*, 359 Mo. 1119, 225 S.W.2d 745 (1949). This is so because under § 527.100[5] and Rule 87.09,[6] "costs" are to be awarded in a way that is "equitable and just," *Union Center Redevelopment Corp. v. Leslie*, 733 S.W.2d 6, 10 (Mo.App.1987), and "costs" has been interpreted to include attorney fees. *Bernheimer*, 225 S.W.2d at 755.

■ Nevertheless, Economy argues that the attorney fees award was an abuse of trial court discretion "as [Economy] was not acting in bad faith." Economy insists that "it's [sic] position was not so clearly wrong that it should be required to pay attorney fees for the … Ledbetters." However, that argument misconceives the standard for awarding attorney fees in a declaratory judgment action. While the absence of "bad faith" in filing suit is a factor in arriving at equity and justice in assessing costs, such absence does not compel denial of attorney fees. *See Allstate Ins. Co. v. Sullivan*, 643 S.W.2d 21, 24 (Mo.App.1982) (Insurer's action in bringing declaratory judgment suit found not to be "in any way frivolous or unjustified," yet, justice and equity warranted allowing attorney fees.)

**4.** It is unclear what form of legal representative was available to be named for the decedent Davis. In its brief, Economy directs our attention to a deposition exhibit, i.e., a letter by Colonial to "The Estate of Michael Davis c/o Carlton Davis." Also, Colonial's brief twice refers to "The Estate of Michael Davis." Colonial's brief also suggests that a "Defendant Ad Litem" was appointed for Michael Davis, although the record does not show such appointment in this case. We can only speculate whether such appointment occurred in the "friendly" suit filed to conclude the now aborted settlement. Regardless, no one acting on behalf of Michael Davis as personal representative, defendant ad litem, or in any other representative capacity was named as party to this litigation.

**5.** Section 527.100 provides: "In any proceeding under sections 527.010 to 527.130 the court may make such award of costs as may seem equitable and just."

**6.** Rule 87.09 reads: "In any proceeding under Rule 87 [Declaratory Judgments] the court may make such award of costs as may be equitable and just."

"Awards of attorney's fees are left to the broad discretion of the trial court and will not be overruled except for an abuse of discretion." *Leslie,* 733 S.W.2d at 9.

█ Given the rights of the parties, the amount of financial interest involved in the case, and lack of standing for Economy to bring this action as evidenced by published case authority, we cannot conclude that the trial court abused its discretion in finding that justice and equity warranted the allowance of $5,000 attorney fees to the Ledbetters to defend this action. Point III is denied.[7]

The judgment of the trial court is affirmed.

PREWITT, P.J., and CROW, J., concur.

John A. Ross, St. Louis County Counselor, Daniel Bartlett, Jr., Assoc. St. Louis County Counselor, St. Louis, for respondent.

Before GRIMM, C.J., REINHARD, P.J., and GARY M. GAERTNER, J.

---

7. *State v. Thompson,* 81 Mo. 163, 168 (1883), and *Ensworth v. Curd,* 68 Mo. 282, 285 (1878), dispel any notion that the trial court here lacked authority to award attorney fees because of the absence of an indispensable party. They hold that where statutory authority for cost assessment exists, a court may assess costs even though it dismisses the main cause for want of authority to decide it. *See also In re Thomasson,* 159 S.W.2d 626, 628 (Mo.1942) (Supreme Court acknowledged *Ensworth* and *Thompson* as yet being the law); *Gore v. St. Anthony's Medical Center,* 866 S.W.2d 871, 872 (Mo.App.1993) (Affirmed order of trial court entered in August 1992 assessing court costs to plaintiff after his voluntary dismissal of cause in February 1992, thus, implicitly recognizing that where there exists statutory authority for assessing costs, assessment can occur without an underlying cause of action).