**FARMERS INSURANCE CO., INC., Appellant,**

v.

**John MILLER, John McKenzie, Sr., Shirley Ode, Liberty Mutual Fire Insurance Co., and Chad Foelkerts, Respondents.**

No. 69096.

Missouri Court of Appeals, Eastern District, Division Four.

May 21, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1996.

Application to Transfer Denied Aug. 20, 1996.

David Ott, Gary P. Paul & Aaron I. Mandel, Brinker, Doyen & Kovacs, P.C., Clayton, for appellant.

David L. Schlapprizzi & Albert Lebowitz, Donald L. Schlapprizzi, P.C., St. Louis, Robert L. Devereux, Devereux, Murphy, Striler & Brickley, L.L.C., St. Louis, Martin J. Buckley, Evans & Dixon, St. Louis, for respondents.

SIMON, Judge.

Farmers Insurance Company, Inc. (Farmers), appeals a declaratory judgment entered in favor of John Miller, John McKenzie, Sr., Shirley Ode (collectively respondents), and Liberty Mutual Fire Insurance Company (Liberty), and Chad Foelkerts (Foelkerts), determining the amount of coverage of an automobile insurance policy issued by Farmers to Tammy L. Ray (Ray).

On appeal, Farmers contends that the trial court erred in entering a declaratory judgment in favor of respondents because: 1) the trial court did not have subject matter jurisdiction over the declaratory judgment action filed by respondents; 2) Farmers and respondents had reached a settlement agreement; and 3) the "drop down" clause in the Farmers' policy applies and limits its liability. Reversed and remanded with directions to dismiss the petition.

The record reveals that the case was submitted on stipulated facts and trial briefs. On August 12, 1990, Foelkerts was driving an automobile owned by Ray, with her permission, when he collided with a vehicle driven by Miller. As a result of the accident, Miller sustained injuries and John L. McKenzie, a passenger in Miller's car, died. Shirley Ode and John McKenzie, Sr. are the natural parents of John L. McKenzie. Ray's vehicle was covered by an insurance policy issued by Farmers which provides in pertinent part:

Other Insurance

If there is other applicable Auto Liability Insurance on any other policy that applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits.

We will provide insurance for an insured person other than you or a family member up to the limits of the financial responsibility law only.

Respondents contend the policy provided coverage of $250,000.00 per person, $500,000.00 per accident. Miller's vehicle was covered by an insurance policy issued by Liberty, which provided $100,000.00 of underinsured motorist coverage per person and per accident.

The record further indicates that the insurance policy provided in pertinent part:

PART I—LIABILITY

Coverage A—Bodily Injury

Coverage B—Property Damage

We will pay damages for which any insured person is legally liable because of bodily injury to any person and property damage arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer.

\* \* \* \* \* \*

Additional Definitions Used In This Part Only

Insured person as used in this part means:

1. You or any family member

2. Any person using your insured car

The parties entered into settlement negotiations. Farmers contends that respondents settled their claims for $25,000.00 each, which is the limit prescribed by the Missouri Financial Responsibility Act, while respondents deny a settlement was ever reached.

Respondents filed a two-count petition for declaratory judgment against Farmers and Foelkerts alleging in Count I that they are entitled to the policy limits of $250,000.00 per person and $500,000.00 per occurrence under Farmers' policy rather than the limits of the Financial Responsibility Act as set forth in the "Other Insurance" section of the Farmers policy and in Count II that Liberty was liable for the underinsured motorist coverage under the terms of Liberty's policy. Count I was directed against Farmers and Foelkerts, while Count II was directed against Liberty.

Responding, Farmers filed a motion to dismiss alleging that respondents did not have standing to file the declaratory judgment action because they were not third party beneficiaries under the Farmers policy, and therefore, could not sue Farmers directly but were relegated to the garnishment process when and if they obtained a judgment against Foelkerts. It also filed a motion to enforce settlement. The motions were denied.

Further responding, Farmers filed an answer essentially denying the substantive alle-

gations of the petition and pleading as an affirmative defense the settlement of respondents' claims. Thereafter, Farmers filed a motion to dismiss for lack of subject matter jurisdiction contending that the trial court had no jurisdiction under the Declaratory Judgment Act because respondents had not obtained a judgment against Foelkerts and no justiciable issue exists. The motion was denied, and the trial court bifurcated for disposition Farmers' affirmative defense of settlement for disposition following the submission of the respondents' claims.

There is a dispute as to whether Foelkerts was ever served with respondents' petition. In any event, the record fails to indicate if he filed a responsive pleading or was represented by an attorney.

Liberty responded to the petition for declaratory judgment by filing an answer essentially denying the substantive allegations of Count II. Further responding, Liberty filed a counterclaim against respondents alleging that it was not obligated to make any payment under its underinsured motorist coverage because the Farmers' policy limits are not less than the limit of liability under Liberty's underinsured motorist coverage. Therefore, Foelkerts' vehicle was not an underinsured vehicle as defined in Liberty's policy. Liberty also filed a cross-claim against Farmers realleging the same contentions as in its counterclaim. The record does not reveal if Farmers or respondents filed a responsive pleading to Liberty's cross-claim or counterclaim.

On August 7, 1995, the trial court entered its order granting declaratory judgment in favor of respondents and against Farmers, finding that its policy provided coverage to Foelkerts in the amount of $250,000.00 per person, $500,000.00 per accident. On September 18, 1995, the trial court entered an amended order in favor of Liberty, holding that its policy does not apply because Farmers' insurance coverage limits exceeded Liberty's insurance coverage limits. On that same date, the trial court denied Farmers' motion for bifurcation of the settlement issue and its affirmative defense of settlement.

In its first point on appeal, Farmers contends that the trial court erred in granting declaratory judgment in favor of respondents because the trial court did not have subject matter jurisdiction over their claims. Farmers' first point consists of three subpoints. In its first subpoint, appellant contends that respondents were not third party beneficiaries to the insurance contract between Farmers and Ray, and consequently, did not have standing to sue Farmers directly, but were relegated to the garnishment process directed against Farmers when, and if, they obtained a judgment against Foelkerts. Respondents contend that they stand in the shoes of and are in privity with the insured, and thus have an identity of rights with the insured, and have standing to bring a declaratory judgment action against Farmers.

■ Section 527.020 RSMo.1995 (all further references shall be to RSMo.1995 unless otherwise noted) of the Declaratory Judgment Act provides in pertinent part:

> Any person interested under ... a written contract or whose rights, status or other legal relations are affected by a contract ... may have determined any question of construction or validity arising under the ... contract

The Act does not enlarge the jurisdiction of the court over subject matter or parties, but merely opens the doors of the court to certain potential defendants or plaintiffs at a stage prior to that justifying an action for other traditional relief. *Hardware Center, Inc. v. Parkedge Corporation*, 618 S.W.2d 689, 694[8] (Mo.App.1981). Standing is a concept utilized to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court. *American Economy Ins. Co. v. Ledbetter*, 903 S.W.2d 272, 274[2] (Mo.App.1995).

■ Facts alleged in a petition for declaratory judgment must show three things: 1) a justiciable controversy between the parties; 2) the petitioner has a legally protectable interest at stake, and 3) the question posed is appropriate and ripe for judicial resolution. *State Farm Fire & Cas. v. Alberici*, 852 S.W.2d 388, 389[2] (Mo.App.1993).

■ To show a justiciable controversy exists, respondents' petition must allege facts

from which they have present legal rights against Farmers with respect to which they may be entitled to some consequential relief immediate or prospective. *County Court of Washington County v. Murphy*, 658 S.W.2d 14, 16[1] (Mo. banc 1983). Where respondents do not have a right to enforce the contract themselves, and where they are not third party beneficiaries to the contract, no standing exists under the Declaratory Judgment Act to bring an action to determine the rights of the parties under the contract. *Ledbetter*, 903 S.W.2d at 275–6[3].

Here, respondents seek a determination of coverage under an insurance contract to which they are strangers, i.e., the insurance contract between Farmers and Ray, which includes Foelkerts as an insured. They are not parties to the contract nor are they third party beneficiaries who can enforce the policy. *See Ledbetter, supra.* Furthermore, respondents' petition does not allege that Foelkerts claimed there was coverage under Farmers' policy or that Foelkerts tendered the defense of the underlying action to Farmers. *See Ledbetter; supra.* Nor is there an allegation that Foelkerts disagrees with Farmers' interpretation of the policy. *See Ledbetter; supra.* In addition, respondents did not plead that Farmers denied coverage or that it agreed to defend Foelkerts under a reservation of rights. *See Alberici, supra.* We cannot infer from the pleaded facts that any of these events occurred, and as a result, the petition lacks an element to establish standing to initiate a declaratory judgment action.

Respondents concede that they are not third party beneficiaries to the policy issued by appellant to Ray, but contend that as tort-claimants they are in privity with the insured and have a right to initiate the declaratory judgment action. In support, they cite *Witty v. State Farm Mut. Auto. Ins. Co.*, 854 S.W.2d 836 (Mo.App.1993), for the proposition that a tort-claimant can bring a declaratory judgment action against the tort-feasor's liability insurer. However, their reliance is misplaced. In *Witty*, the court held that a named insured tort-feasor is an indispensable party to a declaratory judgment action. Here, that is not the issue. The dispositive

holding in *Witty* is not directed to the tort-claimants' standing to initiate the declaratory judgment action, but rather, under the *Witty* pleadings to the non-joinder of the insured tort-feasor as an indispensable party. Thus, *Witty* is of no assistance.

Respondents also cite *State Farm Mut. Auto. Ins. Co. v. Allen*, 744 S.W.2d 782 (Mo. banc 1988), for the proposition that tort-claimants stand in the shoes of and are in privity with the insured, thereby providing standing to bring the declaratory judgment action. Their reliance is misplaced. Our Supreme Court, in *Allen*, relied on *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15 (Mo.1969), for the proposition that tort-claimants stand in the shoes of the insured. *Allen*, 744 S.W.2d at 786[2]. However, in *Greer* the holding was that a tort-claimant only stands in the shoes of the insured when he obtains a judgment against the insured. *Greer*, 441 S.W.2d at 30[19].

Here, the record reveals respondents filed their petition for declaratory judgment on January 14, 1993. Furthermore, the record indicates that respondents obtained a judgment in federal court against Foelkerts on August 14, 1995, and filed it with the trial court on November 30, 1995. However, the federal court judgment had not been entered at the time respondents filed their petition for declaratory judgment, nor had the federal court judgment been filed with the trial court at the time it entered its judgment. In any event, respondents' right to judgment depends on the facts as they exist at the time of the filing of their petition for declaratory judgment, and not as they exist at the time of trial. *First National Bank of Kansas City v. Kavorinos*, 270 S.W.2d 23, 26[4, 5] (Mo. banc 1954). Furthermore, respondents may not file suit prematurely before a cause of action has accrued and any action so brought may not be maintained even though the cause of action has accrued at the time of trial. *Lindsay v. Evans*, 174 S.W.2d 390, 395 [1, 2] (Mo.App.1943). Therefore, respondents had not obtained a judgment against Foelkerts before they filed their petition for declaratory judgment, and as a result *Allen* and *Greer* are not helpful.

Respondents also contend that since appellant conceded coverage of the accident in question, a judgment against Foelkerts was not a condition precedent to filing their petition for declaratory judgment, and in support cite *Farmers Alliance Mut. Ins. Co. v. Reed,* 530 S.W.2d 470 (Mo.App.1975) and *American Food Management v. Transamerica Ins.,* 608 S.W.2d 552 (Mo.App.1980). Here, in Farmers' answer to respondents' petition, it denies that its policy provided coverage for the accident. However, Farmers also plead as an affirmative defense that respondents settled their claims, which would indicate that coverage did exist, in some amount, for the accident in question. In any event, *Reed* and *Transamerica Ins.* were declaratory judgment actions brought by an insurer against its insured. Clearly, in those cases a judgment against the alleged tort-feasor is not a condition precedent to the institution of a declaratory judgment action because the insurer and the insured are parties to the contract in dispute. Here, respondents are not parties to the contract, and as a result, *Reed* and *Transamerica Ins.* are not controlling.

Lastly, respondents cite *Shelter Mutual Ins. Co. v. Briggs,* 793 S.W.2d 862 (Mo. banc 1990), for the proposition that a tort-claimant has the right to appeal from a declaratory judgment denying insurance coverage, and consequently, tort-claimants stand in the shoes of the insured, and have standing to initiate the declaratory judgment action. The trial court relied on *Briggs* in reaching its decision.

In *Briggs,* an insurer brought a declaratory judgment action against its insured (an alleged tort-feasor) and the tort-claimant, alleging that its insurance policy did not cover the accident in question. The trial court granted judgment in favor of the insurer. The tort claimants appealed, while the alleged tort-feasor did not. Our Supreme Court held that § 512.020 provided the tort-claimants standing to appeal the judgment since they were an "aggrieved" party. *Briggs,* 793 S.W.2d at 864[3]. However, the declaratory judgment action in *Briggs* was brought by the insurer against its insured and a tort-claimant, not by the tort-claimants

as in this case. In *Briggs,* the insurer and the insured were parties to the contract in dispute. Furthermore, *Briggs* dealt solely with standing to appeal under § 512.020 and not standing to bring a declaratory judgment action under § 527.020, therefore, it is distinguishable.

Therefore, since respondents lacked standing to bring the declaratory judgment action against Farmers, the trial court lacked jurisdiction and could not proceed in the matter. Therefore, we do not reach Farmers' remaining points. As a result, the judgment of the trial court is reversed, and the cause is remanded with directions to dismiss the petition.

Reversed and remanded with directions to dismiss the petition.

PUDLOWSKI, P.J., and HOFF, J., concur.