**STATE of Missouri ex rel. ST. LOUIS RETAIL GROUP, et al., Appellants/Relators,**

v.

**Robert KRAIBERG, et al., Respondents,**

and

**Westmoreland Service, Inc. and St. Louis Area Petroleum Retailers Association, LLC, et al., Respondents/Intervenors/Cross–Claimants.**

**No. ED 95486.**

Missouri Court of Appeals, Eastern District, Division One.

June 28, 2011.

Elbert A. Walton, Jr., St. Louis, MO, for appellants.

Daniel Emerson, Patricia A. Hageman, City Counselor's Office, St. Louis, MO, for respondents Kraiberg, Bryson, Slay & City of STL.

David R. Bohm, Misty A. Watson, Jeffrey Schmitt, Dana McKitrick, Dana McKitrick, P.C., St. Louis, MO, for respondents Westmoreland & STL Area Petroleum.

KENNETH M. ROMINES, J.

### Background and Procedural History

This case is about standing to challenge the issuance of a municipal liquor license.

Appellants are St. Louis Retail Group (Group), Daryl Mitchell, president of the Group and owner of Mitchell's Package Liquor, and Willie Morris, a member of the Group, owner of On Broadway Package Liquor, and a resident of the City of St. Louis. The Group is an unincorporated association of small businesses which are licensed to sell retail merchandise in the City of St. Louis (City). Some, but not all, of the members are also licensed to sell liquor. Mitchell's Package Liquor and On Broadway Package Liquor are both licensed to sell full package liquor. Respondents are Robert W. Kraiberg, Excise Commissioner of the City[1], Charles Bryson, Director of Public Safety of the City and appointing authority for Kraiberg, Francis G. Slay, Mayor of the City and appointing authority for Bryson, Westmoreland Service, Inc., a Missouri corporation in good standing that operates a convenience store and motor vehicle service station in the City, and St. Louis Area Petroleum Retailers Association (Retailers), a limited liability company whose members are all operators of convenience stores within the City.

---

1. As Excise Commissioner, Mr. Kraiberg has the authority "to make recommendations to the License Collector for the issuance and renewal of licenses" to sell intoxicating liquor. Section 14.02.030A, R.C.St.L.

Respondent Westmoreland applied for a full package liquor license from the City of St. Louis pursuant to Section 14.08.020 R.C.St.L. for its premises at 6020 North Broadway. It operates both a convenience store and a motor vehicle service station, as defined in Section 14.06.250 and Section 14.01.220 R.C.St.L. respectively, at that location. A hearing on the application was held on 9 February 2010. Nathan Conley, attorney and treasurer for the Group, along with several other Group members, attended the hearing. No representatives from Westmoreland were present. At the hearing, Mr. Conley argued that Section 14.08.190 R.C.St.L. does not permit issuance of a full package liquor license to a business such as Westmoreland—one in which a convenience store and motor vehicle service station are located on the same premises. After the hearing, the Excise Commissioner issued Westmoreland a full-package license, stating the he believed the ordinance allowed for the issuance of a full-package liquor license to an establishment that dispensed gas as long as it also met the definition of a convenience store.

Appellants subsequently filed a petition with the court, seeking a writ of prohibition or mandamus to prohibit or revoke the issuance of the full package license to Westmoreland, an injunction against the issuance of any additional full package liquor licenses to motor vehicle stations, and a declaratory judgment that motor vehicle service stations may not be issued liquor licenses.[2] Upon Appellants' motion, the court issued a temporary restraining order enjoining Westmoreland from selling full package liquor and the Excise Commis-sioner from issuing full package liquor licenses to owners or operators of gasoline service stations. Respondents Westmoreland and Retailers filed a Motion to Dismiss Appellants' petition for lack of standing and failure to exhaust administrative remedies. A trial was held on Respondents' motion and the merits of the case. The court issued a judgment finding that Section 14.08.190 R.C.St.L. is ambiguous, but dismissing the case based on Appellants' lack of standing.

As we finding the issue of standing dispositive, we need not address the statutory interpretation issue.

### Standard of Review

■    Our review of a party's standing to sue is de novo. *Executive Bd. of Missouri Baptist Convention v. Carnahan,* 170 S.W.3d 437, 445 (Mo.App. W.D.2005). The question is a matter of law which we determine based on "the petition along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued." *Id.*

### Discussion

Appellants' sole point on appeal is that the trial court erred in dismissing their claim based on a lacking of standing to bring this suit.[3]

■    Standing is a threshold issue. *Columbia Sussex Corp. v. Missouri Gaming Com'n,* 197 S.W.3d 137, 140 (Mo.App. W.D.2006). If a party lacks standing, the court must dismiss the case because it lacks jurisdiction to consider the substantive matters. *Id.* A party cannot waive

---

**2.** The petition was filed against Respondents Kraiberg, Bryson, Slay and Westmoreland. Respondent Retailers was later granted leave to intervene.

**3.** Respondents argue in their brief that even if Appellants have standing to bring this suit, this Court should affirm the trial court's judgment because the City's liquor licensing laws permit the issuance of a full package liquor license to businesses that operate a convenience store and motor vehicle service station on the same premises.

lack of standing. *Davis v. St. Charles County*, 250 S.W.3d 408, 411 (Mo.App. E.D.2008). The court may consider the issue of standing *sua sponte* at any time. *Continental Coal, Inc. v. Missouri Land Reclamation Com'n*, 150 S.W.3d 371, 378 (Mo.App. W.D.2004).

■ Before addressing the standing issue, we must first determine whether we review the administrative decision of the Excise Commissioner or the judgment of the circuit court. Generally, on an appeal of an administrative law case, we review the agency decision. *Continental Coal*, 150 S.W.3d at 378. But, when the subject of the appeal is the jurisdictional issue of standing, this Court reviews the judgment of the lower court. *Id.* at 379 (quoting 20A MO. PRAC., ADMINISTRATIVE PRACTICE & PROCEDURE § 12:43 (4th ed.)). Therefore, we review the circuit court's ruling on the question of standing.

Article 5, section 18 of the Missouri Constitution provides for judicial review of the final decisions of administrative agencies. It further states that "Unless otherwise provided by law, administrative decisions, findings, rules and orders subject to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct ..." Mo. Const. art. V, § 18. To that end, Supreme Court Rule 100.01 provides: "The provisions of sections 536.100 through 536.150, RSMo, shall govern procedure in circuit courts for judicial review of actions of administrative agencies unless the statute governing a particular agency contains different provisions for such review."

While the ordinances at issue in this case provide a procedure for the protest of the issuance of a liquor license, they do not expressly provide a procedure for judicial review of such a decision. Section 14.08 et seq., R.C.St.L. As such, we must look to the procedures provided in Sections 536.100 through 536.150.[4] Section 536.100 governs review in contested cases and Section 563.150 governs review in uncontested cases. To determine the proper procedure, we must first determine whether the Excise Commissioner's decision was of a contested or uncontested case.

■ A "contested" case is a "proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." Section 536.010(4). "Thus, the issue in determining whether a case is contested is not whether a hearing was actually conducted, but whether one was required by law." *State ex rel. Christian Health Care Of Springfield, Inc. v. Missouri Dept. Of Health And Senior Services*, 229 S.W.3d 270, 275 (Mo.App. W.D. 2007). Section 14.08.060 R.C.St.L. requires the Excise Commissioner to hold a hearing before issuing a retail liquor license. As such, this was a "contested" case and Section 563.100 controls.

■ Under Section 563.100 any "person" who is "aggrieved" by a contested administrative decision has standing to challenge that decision. "To qualify as aggrieved persons, plaintiffs must demonstrate a specific and legally cognizable interest in the subject matter of the administrative decision and that the decision will have a direct and substantial impact on that interest." *City of Eureka v. Litz*, 658 S.W.2d 519, 522 (Mo.App. E.D.1983). The interest the person seeks to defend must be one the law protects. *Davis v. St. Charles County*, 250 S.W.3d at 412. Whether a person is considered "aggrieved" such that they have standing is

---

**4.** All statutory references are to RSMo (2010)     unless otherwise indicated.

"is a question of law that depends upon a number of factors, including the nature and extent of the person's interest in the subject matter, the character of the administrative action, and the terms of the statute that created the right or the method of review." *Christian Health*, 229 S.W.3d at 276.

Appellants' first argument is that they have standing because they have an interest in being free from "illegal" competition. There is no legal right to be free from economic competition. *Columbia Sussex*, 197 S.W.3d at 142. An economic competitor may have standing to challenge an administrative decision adverse to its fiscal interests if there is a clear legislative policy to provide such. *Id.* "In the case of economic competitor standing, 'the right exists only when the legislature has broadened the class of affected parties to include those not otherwise having a constitutionally recognized interest.'" *Id.* at 142–43 (internal citations omitted).

One area where the courts have found a legislative intent to provide standing to economic competitors is in the state's banking licensing scheme. *Bank of Belton v. State Banking Bd.*, 554 S.W.2d 451, 456 (Mo.App.1977). In *Belton*, one Kansas City bank sought to challenge the Commissioner of Finance's grant of a facility to another bank in the same area. *Id.* at 452. The court found that the competitor bank had standing to challenge the grant. *Id.* at 457. It based its decision on the express language of Section of 362.107(3)(3) RSMo (1975), which required the Commissioner "to consider "(w)hether other banking institutions will be seriously injured by the approval of the application for the facility at the location specified"" when determining whether to issue a license to a new bank. *Id.* at 454. The court concluded that this language evidenced a legisla-

tive policy concern regarding competition, and as such, competitor bankers were in the class of "aggrieved persons" with standing. *Id.* at 453.

No such policy concern regarding competition is present in the City's liquor licensing scheme. The licensing scheme at issue here requires the Excise Commissioner to determine whether issuing a license would be "detrimental to the neighborhood" before making a decision. Section 14.08.040, R.C.St.L. The primary policy concern is preserving the character of the neighborhood. In this way, the policy concerns of liquor licensing are more similar to the policy concerns of zoning ordinances than bank licensing. This Court has explicitly held that status as an economic competitor does not give one standing to challenge a zoning decision. *City of Eureka*, 658 S.W.2d at 523. Appellants do not have standing as economic competitors.

Appellants' second argument for standing is based on the liquor license ordinances' notice requirements. Appellants' argue that the ordinances' notice requirements evince a legislative policy that those persons who must be notified of an application have a specific interest in the Excise Commissioner's decision. Although the ordinances do not explicitly provide as such, Appellants' claim that any person who is required to be provided with notice of the license application has standing to challenge the decision. Even if we accept Appellants' proposition that all persons required to be notified of a pending application have standing to challenge the subsequent decision, this still would not provide standing for the actual Appellants in this case.

A close analysis of the relevant ordinances is necessary for a resolution of this argument. Under the City's retail liquor licensing scheme, after filing an applica-

tion, the applicant must send a postcard to every person residing or conducting business within the "petition circle," notifying that person of the application, the application hearing, the applicant's intent to circulate a neighborhood consent petition, and the recipient's right to protest the application. Section 14.08.060 R.C.St.L. The petition circle is "an area, circular in shape, with a radius of three hundred fifty (350) feet drawn from the center of the front of the licensed premises projected to the street." Section 14.01.310 R.C.St.L. The Excise Commissioner must post a sign with substantially the same information on the applicant's premises. Section 14.08.060 R.C.St.L. After the application hearing has been scheduled, the Commissioner must notify individually "the Alderman of the ward in which the licensed premises would be located, [ ] the police department, and [ ] all addresses within the petition circle notice of the time, place and date of said hearing." *Id.* Finally, the Commissioner must place a notice with the time, place and date of the hearing, the name of the applicant, the address of the premises proposed to be licensed, and the type of license applied for at each end of the block on the side of the street where the applicant proposes to locate the establishment. *Id.*

Appellants concede they are not within the petition circle. They argue that because notices are required to be placed at the end of each block, the City Counsel intended that notice be given to the general public and as such, anyone in the general public has standing. Such a conclusion cannot be read from the sections at issue.

Looking at the licensing scheme as a whole, it is evident that the purpose of the scheme is to prevent detriment to the "neighborhood." *See* Section 14.08.080 R.C.St.L. The City Council recognized that those within the petition circle have a spe-

cial interest in the outcome of an application by requiring they be provided with notice individually. Those who simply reside or conduct a business on that block have a more attenuated claim to standing. It appears the City Council felt those on the block, and perhaps more generally "in the neighborhood," have at least some interest in the application by requiring public notice. But in no sense could these Appellants reasonably be considered "neighbors" of the applicant's business. As such, the ordinances' notice requirements do nothing to bolster their claim of standing.

### Conclusion

Appellants fail in their pleadings to allege that they are aggrieved persons, nor do they identify any specific or legally cognizable interest which will be harmed by the grant of a full package liquor license to Respondent Westmoreland. They are not aggrieved as economic competitors. They are not within the circle of petition. Nor could they even reasonably be considered "neighbors." Their vague allegation of "irreparable harm" demonstrates no direct, substantial, and immediate effect on any of Appellants' interests. *City of Eureka,* 658 S.W.2d at 522. The trial court did not err is dismissing this case for lack of standing. *Id.*

As the issue of standing is dispositive, we do not address any other issues raised in this case.

The judgment is AFFIRMED.

ROY L. RICHTER, C.J. and KENNETH F. THOMPSON, Sp.J., concur.