

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| RONALD D. RUFF, ET AL., | ) | No. ED110182 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | Franklin County |
| vs. | ) | |
| | ) | Honorable Ada Brehe-Krueger |
| BEQUETTE CONSTRUCTION, ET AL., | ) | |
| | ) | |
| Respondents. | ) | Filed: January 17, 2023 |

## I.    Introduction

Plaintiffs/Appellants are a group of twenty-one (21) homeowners ("Homeowners") in the Birch Creek Estates Subdivision located in Franklin County, Missouri ("Birch Creek"). Homeowners appeal from the summary judgment entered by the Franklin County Circuit Court declaring that Defendant/Respondent Bequette Construction, Inc. ("Bequette") holds "developer rights"[1] associated with Birch Creek and that Homeowners lack standing. Additional parties are Defendant/Respondent Birch Creek Homeowner's Association (the "HOA") and Intervenor/Respondent Legends Bank, a Missouri banking corporation ("Legends").

---

[1] In a recent related action, our Supreme Court recognized that, "[i]n general, 'developer rights' are the rights of a subdivision developer to declare covenants for a subdivision that 'regulate[] the relationship of the real estate developer to its subdivision, as well as the purchasers of property.'" *State ex rel. AJKJ, Inc. v. Hellmann*, 574 S.W.3d 239, 241 n.1 (Mo. banc 2019) (second alteration in original) (quoting *Hellman v. Sparks*, 500 S.W.3d 252, 259 (Mo. App. S.D. 2015)). Missouri courts have also recognized that "developer's rights" with respect to a platted subdivision "are personal rights that do not run with the land." *Scott v. Ranch Roy-L, Inc.*, 182 S.W.3d 627, 633 (Mo. App. E.D. 2005); *Woodglen Estates Ass'n v. Dulaney*, 359 S.W.3d 508, 513 (Mo. App. W.D. 2012).

Homeowners bring four points on appeal relating to the entry of summary judgment in favor of Bequette and Legends. We only address Homeowners' first point regarding its standing, as it is dispositive of this appeal. Bequette cross appeals the circuit court's denial of its post-judgment motion for an award of attorneys' fees.

Because Homeowners are not parties to, and have not alleged they are third-party beneficiaries of, the deeds at the center of this controversy, they do not have standing to seek a declaratory judgment with respect to the deeds because they do not have a "legally protectable interest" therein, as required by the cases interpreting the issue of standing under Missouri's Declaratory Judgment Act (§§ 527.010-.130[2]). Accordingly, we affirm the circuit court's granting of summary judgment in favor of Legends and Bequette and the granting of Legends's third-party petition for declaratory judgment, and affirm the denial of Homeowners' amended petition for declaratory judgment in this matter. We also affirm the circuit court's denial of Bequette's request for attorneys' fees in its cross appeal because the plain language of the contract provision does not support such an award. Finally, we deny Bequette's request for attorneys' fees on appeal.

## II.    Factual and Procedural History

*General Background*

Each property in Birch Creek is subject to the *Declaration of Covenants and Restrictions* (the "Covenants"), which was recorded on December 19, 2000. The Covenants identify AJKJ, Inc. ("AJKJ") and New Sites, LLC ("New Sites") as the "Developer" and acknowledge the creation of the "Birch Creek Subdivision Association." Legends was the lienholder for the project. Under Article IX, Section 5 of the Covenants, the Developer has the unilateral authority to amend, modify, or terminate the Covenants so long as the Developer (or the Developer's

---

[2] All statutory references are to RSMo (2016), unless otherwise specified.

successors and assigns) owns any lot in Birch Creek. After the Developer no longer owns any lot, the Covenants may only be amended by a vote of two-thirds (2/3) of the owners of the platted lots.

On August 25, 2014, AJKJ executed a *General Warranty Deed* whereby AJKJ conveyed its "right, title, and interest" in and to all of its property in Birch Creek to New Sites (the "New Sites Deed"), without mentioning whether any of AJKJ's "developer rights" were conveyed or transferred.

On June 25, 2015, New Sites executed a *Special Warranty Deed* whereby it conveyed to Legends "all of its right, title, and interest as developer of the Birch Creek Estates subdivision, including but not limited to those arising pursuant to the [Covenants]…" (the "Legends Bank Deed").

On June 30, 2015, Legends executed a *Special Warranty Deed* whereby it conveyed to Bequette "all of its right, title, and interest…, as the developer of the Birch Creek Estates subdivision…, including but not limited to those arising pursuant to the [Covenants]…" (the "Bequette Deed"). On the same day, AJKJ executed a written instrument titled *Conveyance of Developer Rights*, which contained conveyance language similar to that of the Bequette Deed (the "Developer Rights Conveyance"). All deeds and the Developer Rights Conveyance were recorded with the Franklin County Recorder of Deeds.

In 2015, Bequette announced that it intended to form the HOA, which was a new homeowner's association for Birch Creek, and that Bequette's owner, Anthony J. Bequette, would serve as the initial trustee thereof. Bequette also announced plans to amend the Covenants to reduce the minimum square footage for new homes built in Birch Creek, among other changes.

3

*The Homeowners' 2016 Lawsuit Against Bequette*

In April 2016, Homeowners filed a petition pursuant to Missouri's Declaratory Judgment Act seeking a declaration that, *inter alia*, Bequette could not unilaterally amend the Covenants because it did not hold "developer rights" associated with Birch Creek in that the New Sites Deed did not contain an express conveyance of developer rights from AJKJ to New Sites (the "2016 Lawsuit").[3] Homeowners named Bequette and the HOA as defendants. In their answer and affirmative defenses, Bequette and the HOA alleged that Bequette possessed developer rights associated with Birch Creek, and also raised the issue of Homeowners' standing to seek a declaratory judgment with respect to the conveyance of developer rights, among other defenses.

In February 2018, the trial court held a bifurcated bench trial in the 2016 Lawsuit. The sole issue presented in the initial portion of the bifurcated trial was whether Bequette held developer rights associated with Birch Creek. On April 24, 2018, the circuit court entered an interlocutory judgment (the "Interlocutory Judgment") finding that Homeowners had standing to pursue a declaratory judgment action with respect to whether Bequette had developer rights and that developer rights were not transferred via the New Sites Deed. The Interlocutory Judgment did not address the other claims and prayers for relief raised in Homeowners' amended petition in the 2016 Lawsuit, which included several claims and prayers for relief related to the Covenants.[4]

---

[3] Although not conclusively established, the record indicates that there are approximately 124 platted lots in Birch Creek. Therefore, it appears that not all Birch Creek property owners are parties to the 2016 Action.

[4] For example, ¶ 64 of Homeowners' amended petition alleges that there is a dispute between the parties relating to: (a) whether the HOA has authority to govern Birch Creek, (b) whether amendments Bequette made to the Covenants in 2015, 2016, and 2017 are valid; (c) whether Bequette's proposed new construction plans violate the Covenants; and (d) whether two new homes already constructed by Bequette violate the Covenants. In addition, ¶ 65 requests that the circuit court enter a declaratory judgment and an injunction with respect to the disputes alleged in ¶ 64.

*AJKJ's 2018 Reformation Lawsuit*

On June 1, 2018, AJKJ filed a single-count petition with the Franklin County Circuit Court seeking to reform the New Sites Deed on the grounds of mutual mistake (the "Reformation Lawsuit"). AJKJ named New Sites, Legends, and Bequette as defendants, but did not name Homeowners. AJKJ alleged the parties "inadvertently failed to include the words 'developer rights'" in the New Sites Deed.

On July 19, 2018, the circuit court entered its judgment in the Reformation Lawsuit, ordering the New Sites Deed "reformed and corrected to include the words 'including developer rights' in the description of the property and rights to be transferred from AJKJ, Inc., to New Sites, LLC" (the "Reformation Judgment"), which was effective "as of the date of the original conveyance of the New Sites Deed (i.e., August 25, 2014)."[5]

On August 14, 2018, Homeowners moved to intervene in the Reformation Lawsuit and set aside the Reformation Judgment (the "Motion to Intervene"). On September 13, 2018, the circuit court granted the Motion to Intervene and vacated the Reformation Judgment.

On October 8, 2018, AJKJ filed a petition for writ of prohibition with this Court, which was denied. AJKJ then filed a similar petition with the Supreme Court of Missouri, which was granted, finding that the circuit court did not have jurisdiction at the time it granted the Motion to Intervene under Rule 75.01 because more than thirty days had passed since the Reformation Judgment was entered and the Motion to Intervene was not an authorized post-trial motion that extended the circuit court's jurisdiction under Rule 85.01(a). *See generally State ex rel. AJKJ, Inc. v. Hellmann*, 574 S.W.3d 239 (Mo. banc 2019). Thus, the Reformation Judgment was determined to be a final judgment in the matter.

---

[5] All further references to the New Sites Deed are as it was reformed by the Reformation Judgment.

*Legends Intervenes in the 2016 Lawsuit and Other Proceedings*

On January 6, 2021, Legends moved to intervene in the still-pending 2016 Lawsuit and concurrently filed its third-party petition for declaratory judgment, which sought a declaration that the Legends Deed and the Bequette Deed, in conjunction with the reformed New Sites Deed, conveyed all developer rights associated with Birch Creek to Bequette and that Bequette possesses all developer rights, free of any claim by Homeowners. On January 15, 2021, Legends filed a motion requesting that the Interlocutory Judgment be set aside, arguing, *inter alia*, that it was contrary to the Reformation Judgment. On February 5, 2021, the circuit court granted the Motion to Intervene.

On January 28, 2021, Bequette filed its third motion to reconsider the Interlocutory Judgment, and on March 10, 2021, the circuit court set aside the Interlocutory Judgment by written judgment and order.

On May 24, 2021, Legends filed a motion for summary judgment in the 2016 Lawsuit, based on the Reformation Judgment and other evidence, arguing it was clear AJKJ, New Sites, Legends, and Bequette all intended for "the developer rights to pass from New Sites to Legends, and then to Bequette." Legends also asserted that Homeowners lacked standing to challenge the transfer of developer rights. On June 7, 2021, Bequette likewise moved for summary judgment by incorporating Legends's motion. Homeowners opposed the two motions for summary judgment, arguing, *inter alia*, that at the time of the New Sites Deed, no party had the required intent to transfer developer rights under applicable Missouri law. Homeowners also argued that "under the rules of collateral estoppel, the Reformation Judgment cannot be enforced against [them] because they were not parties to the Reformation Lawsuit." Thus, Homeowners argued that the Reformation Judgment was void as to them and they had standing pursuant to § 527.020.

6

On August 16, 2021, the circuit court granted summary judgment in favor of Legends and Bequette, ruling that Bequette holds all developer rights associated with Birch Creek based on the Reformation Judgment and that Homeowners lacked standing to challenge the transfer of developer rights via the deeds (the "2021 Judgment"). In the 2021 Judgment, the circuit court also denied Homeowners' amended petition for declaratory judgment and granted Legends's third-party petition for declaratory judgment in the 2016 Lawsuit.[6] Although Homeowners' amended petition originally asserted claims and sought relief with respect to the Covenants, Homeowners had previously dismissed all claims and prayers for relief not addressed in the Interlocutory Judgment, which left only claims related to the three deeds. Homeowners appeal from the 2021 Judgment.

*Bequette's and the HOA's Motion to Amend the 2021 Judgment to Award Attorneys' Fees*

The 2021 Judgment taxed court costs against Homeowners, but made no award of attorneys' fees to any party. Bequette and the HOA filed a motion to amend or modify the 2021 Judgment pursuant to Rule 75.01, requesting that the court award Bequette $201,972.19 in attorneys' fees it incurred for the 2016 Lawsuit and other "collateral matters" brought by Homeowners (the "Motion to Amend"). Bequette and the HOA relied on three separate grounds for an award of attorneys' fees: (1) the express terms of the Covenants; (2) the Declaratory Judgment Act; and (3) to balance the equities. After extensive briefing and oral argument, the circuit court denied the Motion to Amend, rendering the 2021 Judgment final for purposes of appeal. Bequette cross appeals the denial of the Motion to Amend.[7]

---

[6] We note that although the 2021 Judgment also purported to grant Bequette's petition for declaratory judgment, the record does not reflect any such petition being filed by Bequette in the 2016 Lawsuit.

[7] Bequette also filed a motion for its attorneys' fees on appeal, which is taken with the case and addressed below.

7

### III.    Standard of Review

"Our review of the circuit court's grant of a motion for summary judgment is essentially *de novo*, and we will use the same criteria that apply to the circuit court's review of the motion." *Borges v. Missouri Public Entity Risk Mgmt. Fund*, 358 S.W.3d 177, 180 (Mo. App. W.D. 2012) (citing *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). "The propriety of summary judgment is purely an issue of law." *ITT Comm. Fin.*, 854 S.W.3d at 376.

In this case, the circuit court granted summary judgment on the basis of Homeowners' lack of standing. "Standing is a question of law that we review *de novo*." *Borges*, 358 S.W.3d at 180 (citing *State ex rel. St. Louis Retail Group v. Kraiberg*, 343 S.W.3d 712, 715 (Mo. App. E.D. 2011)). "We consider the petition along with any other non-contested facts to determine whether the petition should be dismissed due to [the petitioner's] lack of standing." *Id.* (citing *Kraiberg*, 343 S.W.3d at 715).

### IV.    Discussion

Homeowners bring four points on appeal.  However, Homeowners' first point, which addresses the threshold issue of their own standing, is dispositive of this appeal.  Therefore, we only address that point and need not address Homeowners' remaining three points.[8]  We also address Bequette's cross-appeal regarding its request for an award of attorneys' fees.

---

[8] In their second point, Homeowners argue that the circuit court erred in relying on the Reformation Judgment to vacate the Interlocutory Judgment because the Reformation Judgment was an improper collateral attack on the Interlocutory Judgment.  In their third point, Homeowners argue that the circuit court misapplied the summary judgment standard by disregarding a disputed material fact regarding the parties' intent to transfer developer rights and impermissibly reaching legal issues not presented in the summary judgment briefing.  In their fourth point, Homeowners argue that the circuit court erred in granting Legends' motion to intervene because Legends submitted no supporting evidence and did not meet the requirements for intervention.

**A.**

Homeowners' appeal of the 2021 Judgment – Point I (Homeowners' standing)

*Summary*

In their first point on appeal, Homeowners argue that the circuit court erred in determining they lacked standing to bring this declaratory judgment action, asserting two alternative theories. First, Homeowners claim they have standing under § 527.020 to seek an interpretation of the Covenants because they are parties to the Covenants. Homeowners alternatively claim they have standing under a so-called "non-statutory" theory because they have a "legally protectable interest at stake" in the Covenants, which means a pecuniary or personal interest in their interpretation under applicable case law. Homeowners claim they have such an interest because the Covenants govern permissible construction in Birch Creek, and Bequette's new construction plans will allegedly impact Homeowners' property values.

Bequette argues that Homeowners lack standing because the issue of whether developer rights were transferred can only be determined by interpreting the three deeds in the chain of title (i.e., the New Sites Deed, the Legends Bank Deed, and the Bequette Deed), which actually contain the conveyance of developer rights, and not by interpreting the Covenants. Therefore, Bequette argues that because Homeowners are neither parties to nor third-party beneficiaries of these deeds, they lack standing under § 527.020 and applicable case law to seek a declaratory judgment. With respect to Homeowners' second theory, Bequette argues that their claim is "far too attenuated," as it is hypothetical and speculative, and thus, insufficient to confer standing.

We agree that Homeowners do not have standing under § 527.020 to challenge the conveyance of developer rights contained in the New Sites Deed because they are not parties to, and have not alleged they are third-party beneficiaries of, any of the deeds, as required under

9

Missouri law. The issue of whether developer rights were transferred to Bequette involves an interpretation of the three deeds, and <u>not</u> the Covenants.[9] Further, Homeowners' "non-statutory" theory of standing misses the mark, as they rely on case law interpreting standing under the Declaratory Judgment Act, and do not have the requisite "legally protectable interest" to confer standing. Accordingly, the circuit court correctly granted summary judgment in favor of Legends and Bequette with respect to their petitions for declaratory judgment, and likewise correctly denied Homeowners' petition for declaratory judgment.

*Applicable Missouri Law*

As noted, Homeowners commenced the 2016 Lawsuit pursuant to Missouri's Declaratory Judgment Act. In particular, § 527.020 allows any person "interested" under a deed or written contract, or "whose rights, status or other legal relations are affected by a contract," to file an action asking the court to determine any question of construction or validity arising under a deed or written contract and obtain a declaration of rights, status, or other legal relations thereunder. *See Mager v. City of St. Louis*, 699 S.W.2d 68, 70 (Mo. App. E.D. 1985); *see also St. Paul Fire & Marine Ins. Co. v. Med. Protective Co. of Fort Wayne, Ind.*, 675 S.W.2d 665, 667 (Mo. App. E.D. 1994) (recognizing that § 527.020 "authorizes any party with a present ***interest*** in a written contract to have determined any question of construction or validity of the contract" (emphasis added)). However, "[a] declaratory judgment is not a general panacea for all real and imaginary legal ills." *Mo. Soybean Ass'n v. Mo. Clean Water Com'n*, 102 S.W.3d 10, 25 (Mo. banc 2003). Declaratory judgment "is not available to adjudicate hypothetical or speculative situations that may never come to pass." *Id*.

---

[9] Homeowners have argued that developer rights were not transferred from AJKJ to New Sites via the New Sites Deed because it does not contain explicit language to that effect, which they argue is required under Missouri law. Homeowners further argue that because developer rights were not transferred from AJKJ to New Sites via the New Sites Deed, the two subsequent deeds in the chain of title also failed to transfer any developer rights, even though the subsequent deeds contain language explicitly transferring developer rights.

10

Under § 527.020, a circuit court may grant a declaratory judgment if presented with:

> (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a **legally protectable interest** at stake, "consisting of a **pecuniary or personal interest directly at issue** and subject to immediate or prospective consequential relief"; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

*Lane v. Lensmeyer*, 158 S.W.3d 218, 222 (Mo. banc 2005) (emphasis added) (quoting *Mo. Soybean Ass'n*, 102 S.W.3d at 25).

The dispositive issue in this case is whether Homeowners have standing to seek a declaration regarding the conveyance of developer rights in the New Sites Deed. As the parties seeking a declaratory judgment in this case, Homeowners "bore the burden of establishing that they had standing." *Courtright v. O'Reilly Automotive*, 604 S.W.3d 694, 700 (Mo. App. W.D. 2020) (quoting *Corozzo v. Wal-Mart Stores, Inc.*, 531 S.W.3d 566, 572 (Mo. App. W.D. 2017)).

It is well established that "[s]tanding is a threshold requirement," and "[w]ithout it, a court has no power to grant the relief requested." *Querry v. State Highway and Transp. Comm'n*, 60 S.W.3d 630, 634 (Mo. App. W.D. 2001) (citing *In re Estate of Scott*, 913 S.W.2d 104, 105 (Mo. App. E.D. 1995)); *accord Kraiberg*, 343 S.W.3d at 715. Furthermore, "[l]ack of standing cannot be waived." *Querry*, 60 S.W.3d at 634; *Citizens Ins. Co. of America v. Leiendecker*, 962 S.W.2d 446, 449 (Mo. App. E.D. 1998)). "Standing is a concept utilized to determine if a party is sufficiently affected so as to insure [sic] that a justiciable controversy is presented to the court…." *American Econ. Ins. Co. v. Ledbetter*, 903 S.W.2d 272, 274 (Mo. App. S.D. 1995) (citing *Black's Law Dictionary* 1405 (6th ed. 1990)); *Citizens Ins. Co. of America*, 962 S.W.2d at 449.

Standing for declaratory judgment actions requires a "legally protectable interest." *American Econ.*, 903 S.W.2d at 274; *accord Battlefield Fire Protection Dist. v. City of*

11

*Springfield*, 941 S.W.2d 491, 492 (Mo. banc 1997).  This means a "pecuniary or personal interest ***directly*** in issue or jeopardy which is subject to some consequential relief, either immediate or prospective."  *American Econ.*, 903 S.W.2d at 274 (emphasis added) (quoting *City of Jackson v. Heritage Savings & Loan Ass'n*, 639 S.W.2d 142, 144 (Mo. App. E.D. 1982)); *see also Ste. Genevieve School Dist. R-II v. Board of Aldermen,* 66 S.W.3d 6, 10 (Mo. banc 2002) (recognizing that "[a] legally protectable interest exists if the plaintiff is ***directly*** and adversely affected by the action in question" (emphasis added)).  Other courts have similarly recognized that "[a] person must have a legal interest susceptible of protection at stake in order to have standing to bring a declaratory judgment action."  *Mager*, 699 S.W.2d at 70; *see also General Motors Acceptance Corp. v. Windsor Group, Inc.*, 2 S.W.3d 836, 839 (Mo. App. E.D. 1999) (recognizing that a "legally protectable interest means a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief, either immediate or prospective").  "Whether a litigant has an interest which confers standing must be considered on a case by case basis."  *Mager*, 699 S.W.2d at 70.

"In contract actions, a party has a legally protectable interest at stake if it has a ***right to enforce*** the contract as a party thereto or as a third party beneficiary."  *General Motors Acceptance Corp.*, 2 S.W.3d at 839 (citing *American Econ.*, 903 S.W.2d 274) (emphasis added); *see also Hardware Center, Inc. v. Parkedge Corp.*, 618 S.W.2d 689, 692 (Mo. App. E.D. 1981) (similarly recognizing  that "[t]he plaintiff must present a set of facts from which he has legal rights against the defendant he names[,]" and further, "[h]e must be entitled to some consequential relief immediate or prospective").

This Court in *Hardware Center* also observed that "the [Declaratory Judgment Act] appears to distinguish between a person ***interested*** under a contract and a person whose rights,

status or legal relations are *affected* by the contract." *Id*. at 692 n.3 (emphasis added). "Arguably, one could be interested and not have his rights, status or legal relations affected." *Id*. However, we recognized that "judicial interpretation does not reflect this distinction," and thus, we only focused on whether the plaintiff had a "legally protect[a]ble interest" in the case. *Id*. (citing *State ex rel. Chilcutt v. Thatch*, 221 S.W.2d 172, 176 (Mo. 1949), and *Absher v. Cooper*, 495 S.W.2d 696, 698 (Mo. App. 1975)).

In *St. Paul Fire & Marine Ins. Co.*, this Court held that a non-party to an insurance contract lacked standing to seek a declaration with respect thereto. 675 S.W.2d at 666. In reaching that conclusion, we specifically noted that "[n]o authority has been cited to this court and we find none which would authorize or grant standing to seek a declaration of rights under a contract to one who is not a party and who has no right to enforce the contract." *Id*. at 667. We further noted, "the provisions of our Declaratory Judgment Act do not extend standing to a party nor enlarge the jurisdiction of the court over subject matter or parties." *Id*. (citing *Hardware Center, Inc.*, 618 S.W.2d at 694-95). Finally, we noted that the Declaratory Judgment Act "merely opens the doors of court to certain potential defendants or plaintiffs at a stage prior to that justifying an action for other traditional relief." *Id*. (quoting *Hardware Center, Inc.*, 618 S.W.2d at 694); *see also Farmers Ins. Co. v. Miller*, 926 S.W.2d 104, 107 (Mo. App. E.D. 1996) ("Where respondents do not have a right to enforce the contract themselves, and where they are not third party beneficiaries to the contract, no standing exists under the Declaratory Judgment Act to bring an action to determine the rights of the parties under the contract.").

In *Scott,* we held that landowners in a platted subdivision lacked standing to challenge, on the basis of the statute of frauds, an alleged oral assignment of individual developer rights under the subdivision's declaration because the landowners were not parties to the oral assignment

13

agreement. 182 S.W.3d at 633-34. We specifically recognized that, "[o]nly a party to a contract or a transferee or successor of a party to the contract can assert that the contract is unenforceable under the Statute of Frauds." *Id.* at 634 (quoting Restatement (Second) of Contracts § 144 (1981); Restatement (Second) of Contracts § 324 cmt. b (1981)).

Similar results were reached with respect to insurance contracts in *American Econ. Ins. Co.*, 903 S.W.2d at 276-77, and *Farmers Ins. Co.*, 926 S.W.2d at 107. Likewise, in *Hardware Center*, this Court held that a sublessee that was neither a creditor nor donee beneficiary under a lease agreement lacked standing to seek a declaratory judgment with respect to a provision of the lease. 618 S.W.2d at 694-95.

Although we are not aware of any Missouri cases addressing whether a non-party to a deed had a sufficient "interest" therein to confer standing, the prevailing rule in other states is that deeds are interpreted according to the general rules of contract law. *See, e.g., Wiegmann v. Baier*, 203 N.W.2d 204, 208-09 (Iowa 1972); *Cassidy v. Pavlonnis*, 205 P.3d 58, 61 (Or. Ct. App. 2009); *Keith v. Mountain Resorts Dev., L.L.C.*, 337 P.3d 213, 220 (Utah 2014); *Faith United Methodist Church and Cemetery of Terra Alta v. Morgan*, 745 S.E.2d 461, 481 (W. Va. 2013). In addition, although not binding, we find *City of Pinellas Park v. Matthews*, 355 So.2d 475 (Fla. App. 2nd Dist. 1978), particularly instructive here. In *Matthews*, the District Court of Appeal of Florida held that non-parties to a deed that conveyed certain real property lacked standing to bring a declaratory judgment action seeking to have it declared void. Florida's declaratory judgment statute at the time, Fla. Stat. § 86.021 (1975), was substantially similar to Missouri's current statute. *See id*. at 476. In interpreting the Florida statute, *Matthews* specifically recognized: "As we read it, before a party can bring suit under this statute he must claim some rights under the deed which he seeks to have construed." *Id. Matthews* further noted

14

that even though the deed in question may "affect" certain property in which the non-parties have an interest, they lacked standing because they "are claiming no rights under that deed." *Id*. Therefore, we apply the same requirements for standing in a declaratory judgment action involving a contract, to this case, which involves a deed.

*Analysis*

There is no dispute that Homeowners are not parties to the three deeds in the chain of title transferring developer rights, beginning with AKJK and ending with Bequette, including the key deed at issue—the New Sites Deed. Homeowners have also not alleged that they are third-party beneficiaries of any of the deeds. Likewise, Homeowners are not parties to the conveyance of developer rights contained in the deeds, and have not alleged they are third-party beneficiaries of the conveyances. Therefore, under the weight of the foregoing precedent, Homeowners clearly lack standing under § 527.020 to challenge the transfer of developer rights to Bequette, as they do not have the requisite "legally protectable interest" in the deeds or the conveyances because they are not parties to, and have not alleged they are third-party beneficiaries of, the deeds or conveyances, and thus, have no legal right to enforce them. *General Motors Acceptance Corp.*, 2 S.W.3d at 839; *St. Paul Fire & Marine Ins. Co.*, 675 S.W.2d at 667; *Scott*, 182 S.W.3d at 633-34; *American Econ.*, 903 S.W.2d 276-77; *Farmers Ins. Co.*, 926 S.W.2d at 107; *Hardware Center*, 618 S.W.2d at 694-95; *see also City of Pinellas Park*, 355 So.2d at 476.

In addition, although § 527.020 "appears to distinguish between a person ***interested*** under a contract and a person whose rights, status or legal relations are ***affected*** by the contract," Missouri cases do not reflect this distinction. *Hardware Center*, 618 S.W.2d at 692 n.3 (emphasis added). Therefore, we do not separately analyze whether Homeowners' "rights, status or other legal relations" are affected by the deeds and conveyances. Rather, we follow the well-

15

established precedent applicable to declaratory judgment actions involving contracts, which only permits standing for parties to, or third-party beneficiaries of, the subject contract. The fact that Homeowners are parties to the *Covenants* is not relevant in determining whether they have standing to request an interpretation of the deeds and the conveyances contained therein. The only relevant question is whether Homeowners were parties to, or third-party beneficiaries of, the *deeds* or *conveyances* with the legal right to enforce them.

We now turn to Homeowners' "non-statutory" theory of standing, which argues they have a "legally protectable interest at stake" in the Covenants. This argument misses the mark in two respects. First, the issue of whether developer rights were transferred to Bequette involves an interpretation of the conveyances contained in the three deeds, and not the Covenants. Homeowners have dismissed all claims in the 2016 Lawsuit seeking an interpretation of the Covenants, leaving only their request for a declaration that developer rights were not transferred via the New Sites Deed.

Second, Homeowners' "non-statutory" theory actually restates the specific requirements for standing under § 527.020, as the two primary cases relied on in their brief (*i.e.*, *Battlefield Fire Protection Dist. v. City of Springfield*, 941 S.W.2d at 492, and *Lane v. Lensmeyer*, 158 S.W.3d at 222), interpret standing under the Declaratory Judgment Act. Regardless of the nomenclature used to characterize their theory of standing, Homeowners do not have a pecuniary or personal interest **in the deeds** that is **directly** in issue or jeopardy, as required to confer standing. *American Econ.*, 903 S.W.2d at 274; *Ste. Genevieve School Dist. R-II*, 66 S.W.3d at 10; *Battlefield Fire Protection Dist.*, 941 S.W.2d at 492; *Mager*, 699 S.W.2d at 70. This is because, although not explicitly stated in the foregoing cases, they implicitly recognize that one

16

who is neither a party to nor a third-party beneficiary of a contract does not have the legal right to enforce it.

Finally, in further support of our holding, Homeowners' counsel acknowledged at oral argument that had the original "Developer" of Birch Creek (i.e., AJKJ and New Sites jointly) retained its developer rights and made these same amendments to the Covenants, Homeowners would have had no legal basis to challenge the amendments. The recorded Covenants have always permitted the Developer to convey its rights and further permitted Developer and its successors or assigns to unilaterally amend the Covenants so long as Developer still owns a lot in Birch Creek. If Homeowners could not challenge amendments to the Covenants by the original Developer, we see no reason why they could challenge amendments by Bequette (as the successor Developer), which undercuts any argument that Homeowners have a "legally protectable interest at stake" in the deeds. The fact that Homeowners were parties to the Covenants does not establish their standing to seek a declaration as to whether developer rights were conveyed via a deed to which they were neither parties nor third-party beneficiaries. Accordingly, Homeowners' inability to directly enforce the conveyance of developer rights contained in the New Sites Deed precludes them from seeking any declaration with respect thereto under § 527.020 and the cases interpreting it.

In summary, Homeowners have failed to establish any of the requirements for standing with respect to their remaining claim in the 2016 Lawsuit.[10] Therefore, the circuit court correctly granted Legends's and Bequette's motions for summary judgment and Legends's third-party

---

[10] We emphasize that our holding and related discussion herein only addresses Homeowners' standing with respect to their remaining claim requesting a declaration that developer rights were not transferred via the deeds to which they were not parties, and thus, our holding and related discussion should not be construed to comment in any way on Homeowners' standing with respect to any other cause of action they may have against these or other parties to this matter, nor should they be construed to comment in any way on the merits of any such causes of action.

petition for declaratory judgment, and correctly denied Homeowners' amended petition for declaratory judgment in the 2016 Lawsuit.

Point I is denied. Because Point I is dispositive of Homeowners' appeal, we need not address Homeowners' three remaining points.

**B.**

Bequette's Cross-Appeal for Attorneys' Fees

*Summary*

Bequette cross appealed, arguing that the circuit court erred in denying its Motion to Amend the judgment to award their attorneys' fees because the fees are permitted under an indemnification provision in the Covenants. We find that the indemnification provision relied upon by Bequette cannot be construed as proposed, and therefore, the circuit court correctly denied the Motion to Amend.

*Standard of Review and Applicable Law*

"In Missouri, litigants generally bear the expense of their own attorneys' fees as provided in the American Rule." *Lee v. Invs. Title Co.*, 241 S.W.3d 366, 367 (Mo. App. E.D. 2007). However, attorneys' fees may be recovered "if the circumstances arise from one of the following categories: (1) recovery pursuant to a contract or provided by statute; (2) recovery as damages in collateral litigation; or (3) reimbursement to balance the benefits." *Id.*

Although "we generally review the denial of a request for attorneys' fees for an abuse of discretion, if a contract provides for the payment of attorneys fees and expenses incurred in enforcing rights under the contract, the trial court must award those fees." *Brown v. Brown-Thill*, 437 S.W.3d 344, 348 (Mo. App. W.D. 2014) (quoting *Hoag v. McBride & Son Inv. Co.*,

18

967 S.W.2d 157, 175 (Mo. App. E.D. 1998) (internal quotation omitted)); *accord Lee*, 241 S.W.3d at 368.

"We review issues of contract interpretation *de novo.*" *Brown*, 437 S.W.3d at 348. Furthermore, although trial courts are granted broad discretion to award attorneys' fees in most circumstances, "if a claim for attorney's fees is made under a provision of the contract, the trial court must comply with the terms set forth therein." *Id.* (quoting *J&M Secs., LLC v. Brown*, 388 S.W.3d 566, 570 (Mo. App. E.D. 2012)). "Thus, a trial court[] has no discretion whether to award attorneys' fees where they are recoverable by contract, and its failure to do so is erroneous." *Id.* at 348-49 (quoting *Midland Prop. Partners, LLC v. Watkins*, 416 S.W.3d 805, 817 (Mo. App. W.D. 2013)); *accord Lee*, 241 S.W.3d at 368. "An essential principle of contract interpretation is to ascertain the intent of the parties. The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." *Brown*, 437 S.W.3d at 349 (quoting *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859 (Mo. banc 2006)).

"If the contract terms are unequivocal, plain, and clear, the court is bound to enforce the contract as written." *Malan Realty Invs., Inc. v. Harris*, 953 S.W.2d 624, 626-27 (Mo. banc 1997). Furthermore, "[i]t is a well-established principle of contract construction that, when a contract is clear, the court is bound to enforce the terms as written . . . in the absence of a showing that the contract was procured by fraud, duress, or undue influence." *Id.* at 627.

"Attorneys' fees may be awarded on appeal if they are based on a written agreement that is the subject of the issues that are presented in the appeal." *Brown*, 437 S.W.3d at 350 (quoting *Mead v. Moloney Secs. Co.*, 274 S.W.3d 537, 545 (Mo. App. E.D. 2008)).

19

*Analysis*[11]

Bequette's request for attorneys' fees is based on Article IX, Section 15 of the Covenants, titled "Indemnification":

> *The Association* shall indemnify the Developer and its agents, officers and employees and any officer and director of the Association and member of the Architectural Control Committee against any and all expenses, including attorney fees, reasonably incurred by or imposed in connection with any action, suit, or other proceeding (including settlement of any suit or proceeding if approved by the then Board of Directors) to which he or she may be a party by reason of being or having been an officer or director or a member of the Architectural Committee. The officers and directors shall not be liable for any mistake of judgment, negligent or otherwise, except for their own individual willful misfeasance, malfeasance, misconduct or bad faith. The officers and directors shall have no personal liability with respect to any contract or other commitment made by them, in good faith, on behalf of the Association (except to the extent that such officers or directors may also be members of the Association), and the Association shall indemnify and shall forever hold each such person free and harmless from and against any and all liability to others on account of such contract or commitment. Any right to indemnification provided for herein shall not be exclusive of any other rights to which such person may be entitled. *The Association shall, as a common expense, maintain adequate general liability and officers and directors liability insurance to fund this obligation if such insurance is reasonably available*.

(Emphasis added) (the "Indemnification Provision").

Bequette argues that it is the "Developer," as defined in the Covenants, and each Homeowner is a "member" of the HOA. Bequette further argues that "it was subjected to an 'action, suit or other proceeding' on account of its status as developer," and as such, Homeowners are contractually obligated to indemnify and reimburse it for its costs and expenses, including attorneys' fees, arising from the 2016 Lawsuit. Therefore, Bequette argues

---

[11] We note that Homeowners argue Bequette's cross-appeal should be dismissed pursuant to Rule 84.04(c) for failure to include any facts relating to its request for attorneys' fees in its statement of facts, notwithstanding that Bequette did include relevant facts in the argument section of its brief, citing *Kent v. Charlie Chicken, II, Inc.*, 972 S.W.2d 513, 515 (Mo. App. E.D. 1998), among other authorities. While we agree that Bequette's brief violated Rule 84.04(c) in that respect, "[o]ur preference is to decide an appeal on the merits where disposition is not hampered by rule violations and the argument is readily understandable." *Bennett v. Taylor*, 615 S.W.3d 96, 98 (Mo. App. E.D. 2020). Therefore, because the relevant facts relating to Bequette's cross-appeal were generally not disputed and were included in the argument portion of its brief, we decline to dismiss Bequette's cross-appeal on this basis.

it is entitled to its attorneys' fees due to its status as a director of the HOA or member of the Birch Creek Architectural Control Committee because the 2016 Lawsuit "challenged its status as the developer of Birch Creek and, by direct extension, its control of the Association's Board of Directors and Architectural Control Committee," and the attorneys' fees it incurred were "on account of being party to an action, suit or other proceeding related to its status as director of the Architectural Control Committee."

In response, Homeowners argue that Bequette's request for attorneys' fees should be denied because it does not hold "developer rights" associated with Birch Creek, and thus, it is not the "Developer" thereof. However, given our disposition of Homeowners' first point on appeal, this argument is without merit. In the alternative, Homeowners argue that even if Bequette is determined to be the Developer, it is not entitled to an award of attorneys' fees pursuant to the Indemnification Provision for several reasons. Homeowners' chief argument is that the Indemnification Provision, by its own plain language, is not a "loser-pays" indemnification provision which requires the losing party in a suit between parties to the Covenants to pay the winner's attorneys' fees; rather, it expressly provides that the *Association* (and not the individual parties to the lawsuit) shall indemnify the Developer and officers and directors of the HOA for expenses incurred as a result of suits brought against them "to which [they] may be a party by reason of being or having been an officer or director." Homeowners also point to the final sentence of the Indemnification Provision regarding insurance, and argue that the Indemnification Provision is simply an "officer and director indemnification provision," which is funded by insurance (if available), and not the Association as a whole. Finally, Homeowners argue that Bequette's argument is undercut by the fact that the affidavit proffered in support of its request for attorneys' fees indicates that the fees sought were incurred in representing both

21

Bequette and the HOA. Homeowners argue this contradicts the plain language of the Indemnification Provision, which provides that the HOA is the *indemnitor*, not the *indemnitee*.

We agree with Homeowners. The Indemnification Provision simply does not *require* or *permit* an award of attorneys' fees for Bequette under the circumstances presented in this case. The Indemnification Provision only authorizes *the Association* to indemnify the Developer and its agents, officers, and employees (and certain specified people directly affiliated with the Association) for attorneys' fees "incurred by or in connection with any action suit, or other proceeding … to which he or she may be a party by reason of being or having been an officer or director of a member of the Architectural Control Committee" (emphasis added). The Indemnification Provision simply does not provide that the *individual members* of the Association who bring suit against another party to the Covenants are personally liable for the attorneys' fees incurred by the opposing party. The plain language of the Indemnification Provision is clear and unequivocal, and we are bound to enforce it as written. *Malan Realty*, 953 S.W.2d at 626-27. For these reasons, the circuit court correctly denied Bequette's Motion to Amend.[12]

Point denied.

Finally, because Bequette's request for attorneys' fees on appeal is also premised on the Indemnification Provision, we likewise deny this request for the same reasons we hold that the circuit court correctly denied Bequette's Motion to Amend.

---

[12] As noted above, the Motion to Amend argued three separate grounds in support of Bequette's request for attorneys' fees: (1) the express terms of the Indemnification Provision; (2) the Declaratory Judgment Act (i.e., §§ 527.010-.130); and (3) to balance the equities. On appeal, however, Bequette has only argued that it is entitled to attorneys' fees on the basis of the Indemnification Provision. Therefore, Bequette has abandoned any claim to attorneys' fees based on the other grounds asserted in the Motion to Amend, and thus, we need not address these grounds.

22

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the circuit court with respect to Legends's and Bequette's motions for summary judgment, affirm the circuit court's denial of Bequette's Motion to Amend, and deny Bequette's motion for attorneys' fees on appeal.

_____
Kelly C. Broniec, Presiding Judge

Philip M. Hess, J. and
James M. Dowd, J. concur.

23